## THE JOHN SHILLITO Co. *v.* McCLUNG, Surveyor of Customs.

*(Circuit Court of Appeals, Sixth Circuit. September 17, 1892.)*

### No. 24.

**1. CUSTOMS DUTIES — APPEALS FROM COLLECTOR — POWERS OF ASSISTANT SECRETARIES OF THE TREASURY.**

An importer suing the collector to recover duties paid, in order to avoid the bar resulting from his failure to bring the action within 90 days after the decision of his appeal to the secretary of the treasury, as required by Rev. St. § 2931, alleged that such decision was void because made, not by the secretary, but by the assistant secretary, acting in his official capacity as assistant. *Held,* that as the assistant secretaries would have authority to decide such appeals, if that duty were assigned to them by the secretary, or in case of his absence or sickness, (Rev. St. §§ 161, 177, 179, 236, 245,) it must be presumed, in the absence of a contrary showing, that the appeal was lawfully decided.

**2. SAME — ASSISTANT SECRETARIES.**

Rev. St. § 245, providing that the assistant secretaries of the treasury "shall examine letters, contracts, and warrants prepared for the signature of the secretary of the treasury, and perform such other duties in the office of the secretary of the treasury as may be prescribed by the secretary or by law," does not confine the powers of the assistants to the duties of a like nature with those here enumerated, especially when read in connection with sections 161 and 177, which impose more enlarged duties in certain contingencies.

**3. SAME — APPEAL FROM COLLECTOR — DECISION.**

A decision by the secretary of the treasury that he will not entertain an appeal from the decision of the collector of customs, because the protest was not filed in time, is a decision "on the appeal," within the meaning of Rev. St. § 2931, which requires suit to be brought within 90 days after such decision.

**4. SAME — NOTICE TO IMPORTER.**

When an appeal from the collector of customs is lawfully pending before the treasury department, the secretary has authority to determine the same at any time, without first notifying the importer; nor is he required to notify the latter of the result of his decision. 45 Fed. Rep. 778, affirmed.

**5. SAME — ACTION TO RECOVER DUTIES — ESTOPPEL.**

A suit against a collector of customs, to recover duties paid, is practically a suit against the United States; and, as the government is not bound by an estoppel, the fact that the collector did not notify the importer of an adverse decision by the secretary of the treasury upon the importer's appeal does not prevent the collector from setting up as a defense that the suit was not brought within 90 days from that decision, as required by Rev. St. § 2931. 45 Fed. Rep. 778, affirmed.

**6. SAME — ESTOPPEL — ASSIGNMENT OF CLAIM.**

An estoppel *in pais* operates only in favor of the person actually misled, and an assignee of a claim for duties paid cannot rely upon an estoppel alleged to arise from acts of the collector which misled the assignor.

**7. SAME.**

An assignee of an unliquidated claim for duties alleged to have been illegally exacted cannot maintain a suit thereon against the collector, for the assignment of such a claim is void under Rev. St. § 3477.

Error to the Circuit Court of the United States for the Southern District of Ohio, Western Division.

Action by the John Shillito Company against David W. McClung, as surveyor of customs, to recover duties paid. A demurrer to the second amended reply was sustained, (45 Fed. Rep. 778,) and thereupon the plaintiff's petition was dismissed, with costs. Plaintiff brings error. Affirmed.

*Mortimer Mathews*, for plaintiff in error.

*John W. Herron*, U. S. Dist. Atty., and *Henry Hooper*, Asst. U. S. Dist. Atty., for defendant in error.

Before JACKSON and TAFT, Circuit Judges.

JACKSON, Circuit Judge. This is an action at law, brought by the plaintiff in error, a corporation organized and doing business under the laws of Ohio, as assignee of John Shillito & Co., a firm of importers and dealers in dry goods, formerly doing business in Cincinnati, against the defendant in error, as the surveyor of customs for the United States at the port of said city, to recover the sum of $232.75, with interest thereon from October 4, 1881, as an alleged excess of customs duties paid under protest by the said John Shillito & Co. on the importation of an invoice of wool knit goods of the dutiable value of $1,041, which arrived and were entered at the customhouse in Cincinnati on September 16, 1881, and on which the defendant assessed and collected of said importers a total duty of $597.10, being at the rate of 50 cents per pound on the invoice, amounting to 465½ pounds, and 35 cents *ad valorem* in addition, when, as it is claimed, the legal duty thereon was only $364.35, making the alleged excess of $232.75, which said firm of John Shillito & Co., having paid under protest, October 4, 1881, and on the same day appealed from the decision of the collector to the secretary of the treasury, thereafter assigned to the plaintiff in error, who commenced this suit on December 19, 1882, to recover the amount of such excess, with interest from the date of payment thereof by its assignors.

The defendant set up by way of defense to the suit that the secretary of the treasury, on the 10th day of December, 1881, had affirmed said assessment of duties made by defendant, and rejected and decided said appeal against the importers, and that the plaintiff did not bring suit for the recovery within 90 days after such decision, as required by section 2931, Rev. St. U. S. To this the plaintiff filed a reply and amended reply, which the defendant demurred to; but these pleadings are not set out in the transcript of the record under stipulation of the parties, which recites that they were superseded by the second amended reply, and amendment thereto. This second amended reply alleges that on or about the 2d day of November, 1881, the defendant informed John Shillito & Co., (plaintiff's assignors) that the secretary of the treasury had declined to entertain the appeal on said alleged excessive assessment, together with two other appeals made by said firm, on the ground that the protest thereon had not been filed within the time required by law; that afterwards, on or about December 4, 1881, the defendant informed said firm that the secretary of the treasury had, upon a second

report from him, made about November 8, 1881, in regard to said three appeals, revoked his said action in refusing to entertain two of said appeals, and had decided the same, but had not changed his conclusion in respect to the appeal as to the alleged excess on the assessment in question; that thereupon, without the knowledge or request of John Shillito & Co., and without informing said firm, the defendant made such further representations and reports to the secretary of the treasury, as to errors in his original report touching said protest and appeal, as convinced said secretary that the protest had been duly filed, and thereby led the secretary of the treasury to revoke his determination not to entertain said appeal, which was taken up and decided, as alleged in the answer, December 10, 1881; that defendant did not, until this action was brought, inform John Shillito & Co. of said decision, although said firm, by their agent duly authorized in the premises, was during the whole of said time daily in defendant's office, transacting business with defendant in respect to other similar protests and appeals; that, during the whole of said time, John Shillito & Co. were ignorant of said decision, and relied solely upon said representations on the one hand, and said silence on the other, as being an assurance to said firm that the limitation of 90 days, set up in the answer, had not begun to run against the claim set up in the petition; that, in maintaining said silence after said representations and conduct, defendant was grossly negligent of the rights of John Shillito & Co.; and that it was solely on account thereof that said firm did not bring this action within 90 days after the rendering of said decision. To this second amended reply the defendant demurred because the matters set up in avoidance of the answer were equitable, and not legal, and because the same were insufficient in law. The court below sustained this demurrer upon the second ground thereof. Thereupon the plaintiff, by leave of the court, filed an amendment to its second reply, setting up that the secretary of the treasury having on November 2, 1881, declined to entertain the appeal set forth in the petition, on the sole ground that the protest had not been filed within the time required by law; that on or about December 4, 1881, said secretary refused to reconsider his said action in declining to entertain said appeal, and to decide the same; that afterwards, on or about December 10, 1881, without any further action on the part of John Shillito & Co. or the plaintiff, and without their knowledge, consent, or request, and without notification to them, either before or after, until after the bringing of this action, an alleged decision of said appeal, upon its merits, was made, which it is alleged "was made without authority, power, or jurisdiction to make the same, and was totally void and of no effect." It is further averred that said decision was not made by the secretary of the treasury, as inadvertently stated in plaintiff's second amended reply, or by any other officer or person acting as and for said secretary of the treasury, but by the assistant secretary of the treasury, acting in his official capacity as such assistant secretary only, and was on that account unauthorized and void, and of no effect. To this the defendant also interposed a demurrer, because it did not state

facts sufficient to constitute a good reply to the answer. This demurrer was sustained by the court, and thereupon the plaintiff's petition was dismissed, with costs of suit. The present writ of error is prosecuted to reverse this judgment of the circuit court, and the grounds assigned in support thereof are that said court erred in sustaining the demurrer to the second amended reply, and the amendment thereto, and in dismissing the suit with costs.

The propositions relied on by counsel for plaintiff in error to sustain the contention that the matters set up in the second amended reply, and in the amendment thereto, presented a valid reason or excuse for not bringing suit within 90 days, or in avoidance of that defense, are the following, viz.: (1) That the assistant secretary of the treasury had no jurisdiction to decide said appeal of John Shillito & Co., and that said alleged decision was therefore void, and of no effect; (2) that the secretary of the treasury, after having twice declined to entertain said appeal, had thereafter no power or jurisdiction to decide the same upon its merits without the further action, knowledge, consent, or request of the importers who prosecuted the same, and that in so doing the decision was void; (3) that the defendant was estopped from denying that the plaintiff's action had not been commenced within 90 days after the decision of the secretary of the treasury, as required by section 2931, Rev. St. It is claimed that if either of these positions are correct the judgment of the circuit court must be reversed. The averment contained in the amendment to the second amended reply, that the appeal was decided not by the secretary of the treasury, but by the assistant secretary of the treasury, acting in his official capacity as such assistant secretary only, "and was on that account unauthorized and void, and of no effect," includes an allegation of fact and a conclusion of law. The latter is, of course, not admitted by the demurrer, while the former is to be taken as true, and presents the question raised by the first proposition, whether the assistant secretary of the treasury, acting in his official capacity as such, had, or is presumed to have had, the requisite authority to decide the appeal of the importers.

It having been found impossible for the heads of departments to perform, in person, all the duties imposed on them by law, the office of assistant secretary was created for all the departments. In the treasury department, two of such assistant secretaries are required to be appointed by the president, by and with the advice and consent of the senate. "The assistant secretaries of the treasury shall examine letters, contracts, and warrants prepared for the signature of the secretary of the treasury, and perform such other duties in the office of the secretary of the treasury as may be prescribed by the secretary or by law." Section 245, Rev. St. By section 161, Id., "the head of each department is authorized to prescribe regulations, not inconsistent with the law, for the distribution and performance of its business;" and "in case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall, unless otherwise directed by the president, as provided by section 179, perform the duties of such head

until a successor is appointed or such absence or sickness shall cease.". Section 177, Id. By section 236, "all claims and demands whatever by the United States, or against them, and all accounts whatever in which the United States are concerned, either as debtors or as creditors, shall be settled and adjusted in the department of the treasury." It admits of no question that under the foregoing provisions the secretary of the treasury could have assigned to the assistant secretary or secretaries of the treasury department the duty of deciding appeals from assessments made by collectors of customs duties; nor can it be doubted that, in the absence or sickness of the head of that department, such assistant secretaries could have lawfully performed his duties in respect to such matters which have to be determined, settled, and adjusted in that department. The reply does not negative the fact that the assistant secretary was not assigned by the secretary of the treasury to the performance of the duty of deciding the appeal, nor that there was no absence or sickness of the head of the department which devolved the duty upon the assistant secretary. Under such circumstances, is the want of authority to be assumed, or will the law raise a presumption to the contrary in support of the official act? We are clearly of the opinion that the latter is the rule to be applied.

In *U. S.* v. *Peralta*, 19 How. 347, it is said by the supreme court:

"We have frequently decided that 'the public acts of public officials, purporting to be exercised in an official capacity and by public authority, shall not be presumed to be usurped, but that a legitimate authority had been previously given or subsequently ratified.' To adopt a contrary rule would lead to infinite confusion."

In *Parish* v. *U. S.*, 100 U. S. 500, it was held that the acts of the assistant surgeon general were to be treated and regarded as the acts of the surgeon general; the court saying:

"The office of surgeon general is one of the distinct or separate bureaus of the administrative service of the war department. It has been found in regard to many of these bureaus, and even to the heads of departments, that it is impossible for a single individual to perform in person all the duties imposed on him by his office. Hence statutes have been made, creating the office of assistant secretaries for all the heads of departments. It would be a very singular doctrine, and subversive of the purposes for which these latter offices were created, if their acts are to be held of no force until ratified (or authorized) by the principal secretary or head of department."

In *Chadwick* v. *U. S.*, 3 Fed. Rep. 756, it was held that acts of assistant secretaries of the treasury are presumably authorized, under sections 177 and 245, Rev. St., until the contrary is shown. And in *U. S.* v. *Adams*, 24 Fed. Rep. 348, it was held that—

"The assistant secretary of the treasury is not the deputy of the secretary, but only his aid; and his acts will be presumed to have been performed by authority of the secretary, under sections 161 and 245, Rev. St., or under section 177, until the contrary appears."

We think these authorities state the correct principle to be applied to the action of the assistant secretary in the present case. It not appear-

ing to the contrary, his authority to decide the appeal must be presumed. We do not deem it necessary to review the authorities cited by counsel for plaintiff in error to show that the duties of the assistant secretary of the treasury are limited and confined to matters of a like nature and character as the examination of letters, contracts, and warrants for the signature of the secretary of the treasury. That specific enumeration of duties in section 245 does not control the further provision that he shall "perform such other duties in the office of the secretary of the treasury as may be prescribed by the secretary of the treasury or by law," especially when the latter is read in the light of sections 161 and 177, Id., which impose more enlarged duties in certain contingencies. We think there is no merit in the first proposition relied on.

In respect to the second position, that the secretary of the treasury, having on November 2, 1881, declined to entertain the appeal, and on December 4, 1881, refused to reconsider his action in that regard, had no authority on December 10, 1881, to decide the same without further action on the part of John Shillito & Co., and without any notification to them or the plaintiff, the question is presented whether such action on the part of the secretary operated either as a dismissal of or a decision against the appeal. Until withdrawn by the importers who prosecuted it, or dismissed for some cause, it was still pending before the department for decision, and the secretary of the treasury was invested with the requisite jurisdiction to decide the question presented. If the fact of declining to entertain the appeal in November, 1881, on the ground that the protest did not appear to have been made in time, and of refusing on December 4, 1881, to reconsider said action, did exhaust the secretary's authority over the subject, deprive him of the right upon further examination or better information to further consider the matter, reach a different conclusion as to the regularity of the protest, and act upon the appeal, there was then, in legal effect, a dismissal of or adverse decision on the appeal. Counsel for plaintiff in error has presented a very elaborate and highly technical argument to establish that, as the secretary of the treasury was exercising a judicial or *quasi* judicial function in respect to the appeal, his refusal to entertain the same when presented was such action or decision as exhausted or terminated his jurisdiction. If that view of the question is correct, it will be difficult to escape the conclusion that such refusal, based upon the ground that the protest had not been made within the time required by law, was such a decision against the importers as entitled them to bring suit within 90 days thereafter. The reason for the refusal might well be regarded as an adverse decision on the appeal, which was purely a statutory right and remedy, requiring the making of the prescribed protest in order to the consideration of the claim upon its merits. The dismissal of appeals in cases of this character for failure to comply with the statutory prerequisites is as much an adverse decision as one rejecting the claim presented. It will not, therefore, avail the plaintiff in error to say that the act of the secretary in at first declining to entertain the appeal, for the reason alleged,

deprived·him 'of all authority thereafter to consider and decide it upon other ground, called the merits; for, if that is so, there was an adverse decision against the appeal in November, 1881, of which the importers had information.

On the other hand, if the temporary refusal to entertain the appeal did not amount to such decision thereof as exhausted or terminated the secretary's authority in the premises, then it remained pending in the department for such decision, and there was lawful authority for thereafter acting upon it. The importers, as it is alleged, were informed that in two other appeals the secretary had reconsidered his declination to entertain the same, and had thereafter decided them. He had not informed them that he would not pursue the same course in reference to the appeal in question. The law (section 2931, Rev. St.) clearly contemplates that there may be delays in the disposition of such appeals, and provides that—

"No suit shall be maintained in any court for the recovery of any duties alleged to have been erroneously or illegally exacted until the decision of the secretary of the treasury shall have been first had on such appeal, (not necessarily upon the merits of the claim involved,) unless the decision of the secretary shall be delayed more than ninety days from the date of such appeal, in case of an entry at any port east of the Rocky mountains, or more than five months in case of an entry west of those mountains."

While it was not the direct point involved, it is said in *Arnson v. Murphy*, 109 U. S. 238, 3 Sup. Ct. Rep. 184, that—

"The time fixed by statute for commencing this action is within ninety days after the adverse decision of the secretary of the treasury on appeal, but if the secretary fail to render a decision within ninety days the importer has the option either to begin suit, treating the delay as a denial, or to wait the decision and sue within ninety days thereafter."

In what is there said, and under the language of the statute, the secretary's decision "on the appeal" is not restricted to a decision on the merits of the claim thereby presented, but includes his decision on the sufficiency of the appeal itself. If he should decide the appeal to be insufficient for noncompliance with the requirements of the statute, and refuse to consider the same, the importer would have to commence suit within 90 days thereafter. The plaintiff in error is, therefore, in this dilemma: If the action of the secretary on November 2, 1881, in declining to entertain the appeal for the reason that the protest was not made in time, was such a decision on the appeal as exhausted his authority over the matter, then suit should have been brought within 90 days from that time. If such action did not operate as a decision on the appeal, then the matter was still *sub judice* before the department, with the right on the part of the importer to bring suit within 90 days after December 10, 1881, when it was decided upon its merits. The statute does not provide for any notice to the importer as to when the secretary will act upon the appeal, nor as to the result of his action. The secretary's authority to act while the

appeal is still pending is in no way dependent upon the knowledge or request of the importer in the premises.    The cases relied on by counsel for plaintiff in error, of which *Floyd Acceptances*, 7 Wall. 666, and *U. S.* v. *Alexander*, 110 U. S. 325, 4 Sup. Ct. Rep. 99, are examples, holding that, when *quasi* judicial action is had by officials of the government, such action cannot be revoked, where the rights of others are involved, have little or no bearing upon the question under consideration.    They certainly do not sustain the proposition contended for, as applied to the facts set forth, under the statutory provisions relating to the subject.

The third and last ground of reversal urged is that the defendant is estopped from setting up the defense that the suit was not commenced within 90 days after the decision of the secretary of the treasury.    The matters relied on as constituting such estoppel are that defendant, having informed the importers in November and December, 1881, that the secretary had declined to entertain their appeal, and also to reconsider his action in respect thereto, did not thereafter, until this suit was brought, inform said importers of the decision of the appeal made by the secretary on December 10, 1881, although their agent was, during said period, daily in defendant's office, transacting business with him in respect to other similar protests and appeals.    This silence of the defendant after said representations and conduct, it is claimed, was gross negligence on defendant's part of the rights of John Shillito & Co., "and it was solely on account thereof that said firm did not bring this action within ninety days after the rendering of said decision."    In the consideration of the question thus presented the fact should not be overlooked that the defendant is sued, as he was dealt with by the importers, in his official character and capacity, and that his liability, if any, is purely statutory.    "The common-law right of action against a collector to recover back duties illegally collected is taken away by statute, and a remedy given based on statutory liability, which is exclusive." *Arnson* v. *Murphy*, 109 U. S. 238, 3 Sup. Ct. Rep. 184, where the legislation on the subject is reviewed.    It should be furthermore borne in mind that "the action is, to all intent and purpose, with the provisions for refunding the money if the importer is successful in the suit, an action against the government for moneys in the treasury." *Auffmordt* v. *Hedden*, 137 U. S. 329, 11 Sup. Ct. Rep. 103.    As a suit against the United States, through or in the name of their collecting agent or officer, the doctrine of estoppel can properly have no application to the case, for the reason that the government is not ordinarily bound by an estoppel. *Johnson* v. *U. S.*, 5 Mason, 425, and *Carr* v. *U. S.*, 98 U. S. 433.    In the latter case, upon a bill filed by the United States to quiet the title to certain lots in its possession, the defendant set up, by way of estoppel, certain judgments in ejectment rendered by the state courts at the suit of his grantor against officers of the government, then in possession as its agents, in whose behalf the district attorney and other counsel, employed by the secretary of the treasury, appeared.    It was held that these facts constituted no estoppel against the government.    The supreme court there say: "The United States cannot be estopped by pro-

ceedings against its tenants or agents, nor be sued without its consent given by act of congress."

Treating the present action as a proceeding, not against the individual, but against the official through whom the government permits itself to be sued for the recovery of money in its treasury, it is perfectly clear that the matters relied on constitute no estoppel. Individuals as well as the courts must take notice of the duties imposed and of the extent of authority conferred by law upon a person acting in an official capacity. *Whiteside* v. *U. S.*, 93 U. S. 247. It is settled by the case of *Arnson* v. *Murphy*, 115 U. S. 579–586, 6 Sup. Ct. Rep. 185, that no duty or obligation rests upon the officers of the government to give notice to the importers of the decision of the secretary on the appeal, which is a matter of record in the treasury department, and ordinarily communicated to the collector by letter, which is preserved or recorded in the customhouse. "Inquiry there, or at the treasury department, would always elicit information on the subject; and the importer, knowing when the appeal was taken, can always protect himself by bringing his suit after the expiration of the time named after the appeal, although he has not heard of a decision, being thus certain that he will have brought it within the time prescribed after a possible decision." *Arnson* v. *Murphy*, 115 U. S. 584, 6 Sup. Ct. Rep. 188. The plaintiff in error does not bring itself within the question reserved in that case, that "if in any case it should appear that, upon due inquiry of the proper officers, a party had been misled to his prejudice in regard to a decision on an appeal, a different question would be presented from any now before us;" for it is not alleged that any inquiry whatever was made, either of the secretary or the defendant, as to the appeal or the decision thereof. The doctrine of estoppel always presupposes error without negligence on one side, and gross negligence or fraud upon the other, and that it would be inequitable for the party against whom it is asserted to take the advantage. *Brant* v. *Iron Co.*, 93 U. S. 326; *Morgan* v. *Railroad Co.*, 96 U. S. 716. The representations or information that defendant made or gave were not untrue or misleading, and his silence, when under no duty or obligation to speak, cannot possibly constitute an estoppel, even if the suit was against him as an individual. No authority cited establishes an estoppel under such conditions.

But aside from this the estoppel set up was one in favor of the importers, John Shillito & Co. "An estoppel *in pais* does not operate in favor of everybody. It operates only in favor of a person who has been misled to his injury, and he only can set it up." *Ketchum* v. *Duncan*, 96 U. S. 666. If, therefore, there was any estoppel arising out of the matters relied on, it was one in favor of John Shillito & Co., who, it is alleged, were misled or remained in ignorance of the decision on the appeal in consequence of defendant's silence. The benefit of that estoppel, if any, did not pass to the plaintiff in error upon the assignment to it of the claim for the excessive duties paid by John Shillito & Co. Matters of estoppel are personal, and are not assignable. No right of action based upon a fraud or gross negligence implying bad faith is transferable

or assignable. The plaintiff in error, as the assignee of John Shillito & Co., cannot set up or·assert the estoppel, if any, which may have existed in favor of said firm.

There is another fatal objection to the right of the plaintiff in error to maintain this suit: The claim on which it is founded being one against the United States, which had not been liquidated and allowed, could not be legally transferred and assigned by John Shillito & Co. to the plaintiff. Said assignment was void under section 3477, Rev. St. U. S. *U. S.* v. *Gillis,* 95 U. S. 407; *Erwin* v. *U. S.,* 97 U. S. 392; *Phelps* v. *McDonald,* 99 U. S. 298; and *Goodman* v. *Niblack,* 102 U. S. 556. It follows that plaintiff in error, as assignee, can maintain no suit on said claim. We find no error in the judgment of the circuit court, and the same is accordingly affirmed, with costs.