UNITED STATES *v.* CENTRAL VERMONT RAILWAY Co. (COMMON-
WEALTH SHOE & LEATHER Co.) (No. 3168)[1]

United States Court of Customs and Patent Appeals, June 22, 1929

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter,* special attorney, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellee.

[Oral argument May 16, 1929, by Mr. Igstaedter and Mr. Richardson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, and GARRETT, Associate Judges [2]

GRAHAM, Presiding Judge, delivered the opinion of the court:

Four bales of leather backs were imported by appellee on August 28, 1923, at the port of St. Albans, Vt., and were duly entered at their invoice or purchase price. Claiming to act under the authority of an alleged dumping order issued under and by authority of section 201 (a) of the Antidumping Act, 1921, hereinafter more particularly referred to, the local appraiser ascertained the foreign market value and purchase price of the merchandise, estimated the difference and the amount of dumping duty, and reported the same, all as provided for by section 202 of the above-named act. Thereupon the importer appealed to reappraisement and a hearing was had before Justice Young of the

---

[1] T. D. 43474.

[2] LENROOT, Judge, did not participate in this decision, the case having been argued before he took his seat.

Customs Court. A rehearing was thereafter ordered and upon rehearing and trial before Justice Adamson, it was held that the dumping duties were unlawfully assessed and the dutiable value was found to be the entered value. On review by the second division of the Customs Court, this judgment of reappraisement was sustained. From the latter judgment the Government has appealed.

As the issues are presented to us here, two questions of law are involved, namely:

First, was the dumping order above referred to valid, and, in law, sufficient authority for the imposition of the dumping duty assessed here?

Second, could the legality of such dumping order be raised and adjudicated in the proceedings in review before the reappraisement court?

Said section 201 is as follows:

Sec. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

(b) Whenever, in the case of any imported merchandise of a class or kind as to which the Secretary has not so made public a finding, the appraiser or person acting as appraiser has reason to believe or suspect, from the invoice or other papers or from information presented to him, that the purchase price is less, or that the exporter's sales price is less or likely to be less, than the foreign market value (or, in the absence of such value, than the cost of production) he shall forthwith, under regulations prescribed by the Secretary, notify the Secretary of such fact and withhold his appraisement report 'to the collector as to such merchandise until the further order of the Secretary, or until the Secretary has made public a finding as provided in subdivision (a) in regard to such merchandise.

The alleged order of the Secretary of the Treasury issued in this case is as follows:

*Antidumping Act, 1921—Finding by the Secretary of the Treasury*

The Secretary of the Treasury makes finding under section 201 (a), antidumping act, 1921, of dumping in the case of sole leather imported from the Province of Ontario, Canada.

TREASURY DEPARTMENT, *August 3, 1922.*
*To Collectors of Customs and Others Concerned:*

Section 201 (a) of the antidumping act, 1921, provides as follows:

Sec. 201. (a) That whenever the Secretary of the Treasury (hereinafter in this Act called the "Secretary"), after such investigation as he deems necessary, finds that an industry in the United States is being or is likely to be injured, or is prevented from being established, by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere

at less than its fair value, then he shall make such finding public to the extent he deems necessary, together with a description of the class or kind of merchandise to which it applies in such detail as may be necessary for the guidance of the appraising officers.

After due investigation I find that the industry of manufacturing sole leather in the United States is being or is likely to be injured by reason of the importation into the United States of sole leather, imported from the Province of Ontario, Canada, and that such merchandise is sold or is likely to be sold in the United States at less than its fair value.

EDWARD CLIFFORD,<br>*Assistant Secretary.*

It is claimed by appellee that the dumping order issued in this case can not be held to be the act of the Secretary of the Treasury; that there does not appear to be in the order, or elsewhere in the record, any evidence that the Assistant Secretary was acting under and by direction of the Secretary; that, therefore, the order is issued without authority and must be held to be of no effect.

Such authorities as are cited and have come to the attention of the court, on this phase of the case, do not support the contention made by the appellee. On the contrary, the provisions of the pertinent statutes, and much respectable authority, indicate that the opposite is true. Section 161 R. S., now section 22, title 5, United States Code, provided as follows:

22. DEPARTMENTAL REGULATIONS.—The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it. (R. S. sec. 161.)

Sections 246 and 247 of the Revised Statutes relative to the appointment and duties of Assistant Secretaries of the Treasury are as follows:

246. ASSISTANT SECRETARIES OF THE TREASURY.—There shall be in the Department of the Treasury three Assistant Secretaries of the Treasury, who shall be appointed by the President, by and with the advice and consent of the Senate (R. S. sec. 234; July 11, 1890, ch. 667, sec. 1, 26 Stat. 236; March 3, 1917, ch. 163, sec. 1, 39 Stat. 1083; October 6, 1917, ch. 79, sec. 1, 40 Stat. 347).

247. SAME; DUTIES.—The Assistant Secretaries of the Treasury shall examine letters, contracts, and warrants prepared for the signature of the Secretary of the Treasury, and perform such other duties in the office of the Secretary of the Treasury as may be prescribed by the Secretary or by law (R. S. sec. 245).

*United States* v. *Peralta et al.*, 19 How. 343, was a case dealing with a private land claim in California where title was claimed to be derived from a grant during the Spanish occupation. Objection was raised to the official character of the instruments of record. The Supreme Court said:

We have frequently decided that "the public acts of public officers, purporting to be exercised in an official capacity and by public authority, shall not be presumed to be usurped, but that a legitimate authority had been previously given

or subsequently ratified." To adopt a contrary rule would lead to infinite confusion and uncertainty of titles. The presumption arising from the grant itself makes it *prima facie* evidence of the power of the officer making it, and throws the burden of proof on the party denying it.

In *Chadwick* v. *United States*, 3 Fed. 750 [756], the court was considering a quarterly return of a collector which was certified by the Assistant Secretary of the Treasury. It was claimed the certificate was not sufficient as an authentication by the Secretary. The court said:

Assistant Secretaries in the Treasury Department are appointed under the authority of an act of Congress, with power to perform such duties in the office of the head of the department as he may prescribe, or as the law directs. (9 St. at Large, 396; Rev. St. sec. 245.) Extensive duties are assigned to such, and in case of the death, resignation, absence, or sickness of the Secretary, the proper assistant is required by law, unless otherwise directed by the President, to perform all the duties of the department until a successor is appointed, or such absence or sickness shall cease. (Rev. St. sec. 177.) Nothing appearing to the contrary, the legal presumption is that the certificate was made in pursuance of a lawful authority, and, being under the seal of the department, it is sufficient to show that the ruling of the court is correct.

Again, in *United States* v. *Adams*, 24 Fed. 348, the issue arose out of the act of the Assistant Secretary of the Treasury in directing an individual to carry certain money from one office to another. A part of the money was stolen and in suit on the bond to recover for this loss it was claimed no legal authority existed for the transfer of the funds. The court said:

By sections 1 and 2 of the act of September 2, 1789 (1 St. 65, secs. 233, 234, Rev. St.), organizing the Treasury Department, the Secretary of the Treasury was authorized to appoint an Assistant Secretary; and by section 13 of the act of March 3, 1849 (9 St. 396, sec. 245, Rev. St.), the provision for the appointment of such assistant was repeated, with a specification of certain powers and duties, and concluding as follows: "Who shall perform all such other duties in the office of the Secretary of the Treasury, now performed by some of his clerks, as may be devolved on him by the Secretary of the Treasury." By section 5 of the act of March 3, 1857 (11 St. 220), the appointment of the Assistant Secretary was given to the President; and by section 3 of the act of March 14, 1864 (13 St. 26), it was further provided that "an additional Assistant Secretary of the Treasury" should be appointed by the President, "who shall perform all such duties in the office of the Secretary of the Treasury belonging to that department as shall be prescribed by the Secretary of the Treasury or as may be required by law."

An "assistant" is one who stands by and helps or aids another. He is not a deputy, and can not, therefore, act in the name of and for the person he assists, but only with him and under his direction, unless otherwise expressly provided by law. It is a question whether an assistant secretary, appointed under the act of 1849, could be even authorized by the Secretary to do anything in his department, except such acts or duties as were performed at the passage of such act by some of the Secretary's clerks. But no such restraint is imposed on the power of the Secretary as to the assistant authorized by the act of 1864. Any duty pertaining to his office which the Secretary may prescribe for him, such assistant may do; and it is highly probable that in practice the same rule was

followed as to the first assistant. Besides, it is hardly to be doubted that in 1849 some clerk in the Treasury Department was performing the duty of directing collectors as to the disposition of public money in their hands.

But I think that an act done by the assistant, and within the authority and power of the department, must, until the contrary appears, be presumed to have been done under the direction of the Secretary of the Treasury. In *U. S.* v. *Tichenor*, 8 Sawy. 152. S. C. 12 Fed. Rep. 415, this court said that where the President was authorized to reserve land for certain military purposes the action of the Secretary of War, to whose department the subject belonged and the duty pertained, would be presumed, in the absence of evidence to the contrary, to have been authorized by the President. For the purpose, then, of this case it must be presumed that the Assistant Secretary was acting in pursuance of the direction of the Secretary when he required the defendant Adams to take this money to San Francisco and deposit it with the assistant treasurer at that place.

Again, in *The John Shillito Co.* v. *McClung*, 51 Fed. 868, an appeal from a certain protest to the Secretary of the Treasury had been prosecuted. It was claimed that the appeal had been heard by the Assistant Secretary and was, therefore, unauthorized and void and of no effect. The court rejected this claim, saying, after citing several authorities, the following:

We think these authorities state the correct principle to be applied to the action of the Assistant Secretary in the present case. It not appearing to the contrary, his authority to decide the appeal must be presumed. We do not deem it necessary to review the authorities cited by counsel for plaintiff in error to show that the duties of the Assistant Secretary of the Treasury are limited and confined to matters of a like nature and character as the examination of letters, contracts, and warrants for the signature of the Secretary of the Treasury. That specific enumeration of duties in section 245 does not control the further provision that he shall "perform such other duties in the office of the Secretary of the Treasury as may be prescribed by the Secretary of the Treasury or by law," especially when the latter is read in the light of sections 161 and 177, id., which impose more enlarged duties in certain contingencies. We think there is no merit in the first proposition relied on.

In *Franklin Sugar Refining Co.* v. *United States*, 178 Fed. 743, W. B. Howell, signing himself as "Assistant Secretary," issued a circular under the provisions of section 5 of the Tariff Act of 1897, authorizing the collection of a countervailing duty on sugar. It was contended this was improperly issued, and that the duty of issuing such circulars was consigned by the act to the Secretary in person, and that there was nothing to indicate that the assistant was authorized to perform such duties. The court said, in denying this claim:

It is clear from these provisions of the Revised Statutes that the Secretary of the Treasury could require the Assistant Secretary "to ascertain, determine, and declare" the net amount of the bounties which Germany paid on sugars at the time, and to fix the amount to be collected on importations from that country. The circular of July 31, 1897, was issued by the Assistant Secretary of the Treasury, and the presumption is that he was authorized to issue the circular and fix the bounties to be collected for sugar imported from Germany. In the absence of any evidence to the contrary, it is presumed that the Assistant Secretary was performing a duty in accordance with the provisions of the law above referred to,

and the circular must be presumed to have been properly issued and binding upon all importers for importations made during the time it remained in force. *Shillito Co.* v. *McClung,* 51 Fed. 868, 2 C. C. A. 526; 3 Fed. St. Ann. p. 58, note, and p. 61, note.

An important case relative to the office of Assistant Surgeon General and announcing a similar doctrine to that heretofore quoted is *Parish* v. *United States,* 100 U. S. 500.

We are unable, in view of these authorities, to come to any other conclusion than that the act of Edward Clifford, Assistant Secretary of the Treasury, in the absence of any showing to the contrary, must be presumed to have been authorized by the Secretary and to have been within the scope of his duties as he understood them and as attempted to be delegated to him by the Secretary. No contention is made but that Mr. Clifford was the legally qualified and acting Assistant Secretary of the Treasury. His acts must be presumed to be with authority. To hold otherwise would be to subject the act of every subordinate official in the governments, both State and National, to attack, unless, in each case, it was accompanied by proof of its official character. Governments could hardly function under such circumstances. The safer rule, and one in entire harmony with the authorities, is that such acts, when unchallenged, are presumed to be within the scope of official authority.

In what we have said we have assumed a state of facts where nothing appears in the order to indicate that the action is the action of the Secretary of the Treasury. Such, however, is not the case here. It will be observed that the heading of the finding in question recites that it is the finding of the Secretary. We have inspected the original finding and find that in this respect, as in all others, the copy is a true one. There is, therefore, good ground for the contention that the finding on its face purports to be, and is in fact, the finding of the Secretary.

The contention is next made that the duties imposed upon the Secretary of the Treasury by the antidumping statute are of such a character that they can not be delegated to an assistant; that they are personal in character; that even if an Assistant Secretary might perform such duties, he must do it in the name of his principal.

But two authorities are cited in support of this proposition. In *American Rug & Carpet Co. et al.* v. *United States,* T. D. 41762, 50 Treas. Dec. 235, the Customs Court, speaking through Young, Associate Justice, held that a dumping order, issued and signed by Elmer Dover, Assistant Secretary, was invalid, in the following language:

It is clear that the authority delegated by Congress found in section 201 (a) of the antidumping act of 1921, *supra,* is confined to the Secretary of the Treasury. We have not been able to find any law conferring power upon an Assistant

Secretary of the Treasury, acting as such, to perform a duty such as required in this instance, and we do not believe it was the intention of Congress to delegate a power so far-reaching to a subordinate official of the Treasury Department.

Attention is also called to our opinion in *United States* v. *Tower & Sons*, 14 Ct. Cust. Appls. 421, T. D. 42058. In that case a dumping order was issued by Elmer Dover, Assistant Secretary. The point was made in the case that the action of the Assistant Secretary could not be regarded as the action of the Secretary. The court, however, failed to pass on this question, the case being decided upon the broad principle that the Secretary of the Treasury could not delegate to appraising officers at the ports any part of the powers conferred by the Antidumping Act upon the Secretary. We made no intimation in that case that the act was not the act of the Secretary of the Treasury.

In addition to these authorities, attention is called to the opinion of the Attorney General rendered to the Secretary of the Treasury on December 12, 1925. Vol. 35, Opinions Attorney General, 15. In that opinion the Attorney General, without the citation of authorities in support thereof, holds as follows:

In my opinion the powers conferred upon the Secretary by section 201 of the act of May 27, 1921, the so-called antidumping provision, are intended to be personal to the Secretary, and the findings and their publication should have his personal approval.

An analysis of section 201 (a) discloses that the Secretary of the Treasury is mandatorily required to make public a finding upon which dumping duties may be assessed, in a certain contingency—namely, when, after investigation, he finds that an industry in the United States is likely to be injured, or is prevented from being established by reason of the importation into the United States of a class or kind of foreign merchandise, and that merchandise of such class or kind is being sold or is likely to be sold in the United States or elsewhere at less than its fair value. If he finds such conditions to exist he has no choice, but must promulgate the order. He has a broad and liberal discretion in the methods he shall adopt in finding his facts; he has no discretion after the facts are found. In finding the *fair* value of imported goods, he does no more than appraisers and collectors at the ports have been doing for many years.

We considered a somewhat similar delegation of power to the President in *Hampton, jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, affirmed in 276 U. S. 394. In that case section 315, Tariff Act of 1922, was contended to be unconstitutional in that it attempted to delegate to the President a legislative authority. The statute in question authorized the President, whenever he should find on investigation that the duties fixed by the act did not equalize the difference between cost of production at home and abroad, to increase or decrease the schedule rates accordingly, within certain

fixed limitations. This was claimed to be a rate-making power. It was argued that the powers attempted to be given to the President empowered him to use his discretion and to fix and remit duties as he pleased. We did not agree with this contention and said, in part:

There is no uncertainty here as to the congressional intent and policy; no discretion is attempted to be given to the President to determine what the policy shall be; the law imposes upon him no duties and confers upon him no powers except to execute the law, if it be capable of execution. When the President proclaims a change of rate thereunder, the new rate of duty does not come into being as a result of the proclamation, but the proclamation and the rate of duty result from the law.

In illustration of similar legislative provisions, we called attention, in our opinion in the case cited, to the various laws providing for the appraisement of imported merchandise, the act of March 3, 1873, 17 Stat. 602, directing the Secretary of the Treasury to proclaim values of standard coins of foreign countries, the act (sec. 5) of the Tariff Act of July 24, 1897, authorizing the Secretary of the Treasury to fix and proclaim the amounts of bounties or grants for purposes of countervailing duties, and other similar laws. These were all held to be the delegation of ministerial powers only.

Perhaps the leading case on the subject is *Field* v. *Clark*, 143 U. S. 649. There the Congress, by section 3 of the Tariff Act of October 1, 1890, provided that whenever the President shall be satisfied that the Government of any country producing sugars was imposing exactions or duties which "he may deem to be reciprocally unequal and unreasonable," he should, by proclamation, suspend the free entry provisions of the law for such time "as he shall deem just." This was held to confer no legislative power, but to be simply ministerial in its nature.

This brings us to the conclusion that the powers granted by section 201 (a), *supra*, much less extensive than many of those heretofore referred to, are ministerial only, call for the exercise of no discretion except in methods, and are fact finding only. An attempted delegation of anything more than that would render the act unconstitutional. As the Supreme Court, in *Hampton, jr.,* v. *United States*, *supra*, said, in commenting upon the somewhat extraordinary powers delegated to the President and discussed in *Field* v. *Clark*, *supra*:

After an examination of all the authorities, the court said that while Congress could not delegate legislative power to the President, this act did not in any real sense invest the President with the power of legislation, because nothing involving the expediency or just operation of such legislation was left to the determination of the President; that the legislative power was exercised when Congress declared that the suspension should take effect upon a named contingency. What the President was required to do was merely in execution of the act of Congress. It was not the making of law. He was the mere agent of the law-making department to ascertain and declare the event upon which its expressed will was to take effect.

It being the necessary conclusion, therefore, that the powers conferred upon the Secretary by said section 201 are ministerial only, what is to distinguish them from other ministerial powers delegated to that official? Are there certain ministerial powers created by law which the Secretary may perform through his assistants, and others which he may not, but must perform personally? If there are gradations of delegated ministerial duties and powers, where may we say the line of demarcation is between one class and the other?

If any such distinction exists, it has not been called to our attention by the parties here. Nor, in reason, are we able to state any rule which will delimit any such line of demarcation. Certainly the difficulties which the Secretary may encounter in arriving at the facts involved would not be a safe rule by which such distinction might be made.

As we have noted, proclamations under the countervailing duty provisions of the Tariff Act of July 24, 1897 (sec. 5), have been held to be properly made by the Assistant Secretary of the Treasury. *Franklin Sugar Refining Co.* v. *United States, supra.* Comparing that act with said section 201 (a), we find no essential differences. The only differences are those of methods. In both cases the statute expressly provides that the duties shall be performed by the "Secretary of the Treasury." Both require him to find certain facts; both require him to publish them; both acts involve delicate questions of international relations; both may result in the imposition and collection of additional duties. Section 201 (a) perhaps expresses more fully the discretion which the Secretary may exercise in his methods of procedure, but a similar discretion was implied in said section 5. The ascertainment by the Secretary, under said section 5, of the fact whether some bounty or grant was being indirectly paid or bestowed by some foreign nation upon the exportation of certain merchandise, might involve investigation through many channels and by various methods. This duty was not at all dissimilar to that imposed by said section 201 (a) upon the Secretary. We are unable to formulate any safe legal rule by which they may be distinguished.

Our conclusion is, therefore, upon this branch of the case, that the dumping order in question might legally be made by an Assistant Secretary, if properly authorized by the Secretary, and that, there being nothing to show to the contrary, such authority must be presumed.

We arrive then at the inquiry whether the legality of such order could be litigated in the reappraisement proceedings. The Government cites no authorities on this point, but calls attention to the opinion of the Customs Court rendered in *Wm. Prym of America (Inc.)* v. *United States,* T. D. 43040, 54 Treas. Dec. 372. The opinion cited, according to the suggestion made by Government

counsel here, seems to rest upon the ground that such jurisdictional questions can not be raised in the Customs Court when a review is being had of a reappraisement. We do not so understand the opinion. In fact, Justice Tilson, speaking for the court, there states:

> Having concluded that the purported dumping order published in T. D. 41713 was null and void and that all proceedings had thereunder were a nullity, after a careful examination of the record and the authorities upon the subject, we hold that the question raised in the protest is purely a jurisdictional one and may be raised in any judicial tribunal, in any proceeding, at any time the question arises.

We have had occasion to discuss the scope and extent of section 501 of the Tariff Act of 1922 in several cases, and to outline the functions and powers of the Customs Court, both in reappraisement and review. In *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373, T. D. 41318, we said:

> If, then, the functions of the single general appraiser, and the Board of General Appraisers in reappraisement matters are purely judicial, the ordinary rules applicable to other courts and judicial proceedings will apply except where modified or amended by the statutory law here applicable.
>
> \* \* \* \* \* \* \*
>
> We are unable to conclude that this is a correct conclusion of the matter. If the proceeding before the board is appellate, then, surely, the same rules must apply which would obtain in other courts of appeal.

If this be true, then any question affecting the appraisement, either as to its amount or legality, is properly before the Customs Court on review. If such matters are not so cognizable by the Customs Court, they could not be considered here on appeal, for this court reviews the judgment of the reappraising court on questions of law only. Sec. 501, *supra*. Every reasonable view of the matter supports the conclusion that if there be, in fact, no valid appraisement, the Customs Court may so find, on review. Without attempting to express any view as to whether such a question may be raised on a protest to classification, it is sufficient to say that such question need not wait for protest, but may be raised upon reappraisement.

In many cases, while the exact question here raised has not been involved, the Customs Court, on review of reappraisement, has passed upon the validity of the appraisement, and we have reviewed that court's judgments on appeal. Among these are *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 299, T. D. 40313 and *United States* v. *Tower & Sons*, 15 Ct. Cust. Appls. 83, T. D. 42158.

From what we have said, it follows that the judgment of the Customs Court should be, and is, *reversed*.

BLAND, J., specially concurring: With the result reached in the opinion of Judge Graham and with many of the conclusions of law I am in accord. I can not agree that the record in this case shows what is so plainly said in the opinion, that the act is the act of the Secretary, unless by that is meant that *in effect* it is the act of the Secretary.

The record shows, and especially the order itself shows, that it is the act of the Assistant Secretary. He made the finding and signed it, and when he signed it he signed it in his own name and not in that of the Secretary

I think the two statutes, section 201 (a) of the Antidumping Act, 1921, and sections 246 and 247 of the Revised Statutes, quoted in the opinion, clearly authorize an Assistant Secretary to make the finding and make the order in his own name, which I think he did.

Let it be recalled that section 247, *supra*, in part provides that the "Assistant Secretaries of the Treasury shall  *  *  *  perform such other duties in the office of the Secretary as may be prescribed by the Secretary or by law." It will be presumed that the Secretary "prescribed" to his Assistant Secretary, Edward Clifford, the duty of performing such service as was necessary to carry out the provisions of section 201 (a), *supra*.

Were it not for the existence of the special statute authorizing the Assistant Secretary to "perform such other duties," I could not agree that Edward Clifford, Assistant Secretary, in making a finding "after due investigation," was acting in accordance with the law.

The question of the constitutionality of the provisions of the section involved here has not been presented to this court, and I have not given, and am not now giving, that question any consideration.

#### DISSENTING OPINION

GARRETT, Judge: Being unable to agree with the conclusion reached by the majority of the court in this case, and because the question involved appears to be quite an important one, I venture briefly to state my own conclusions and the reasons therefor.

U. S. C. 304, R. S. 356, provides:

The head of any executive department may require the opinion of the Attorney General on any question of law arising in the administration of his department.

Acting under this statute, the Secretary of the Treasury on October 22, 1925, addressed a letter to the Attorney General, stating that he had under consideration the matter of prescribing the duties of the Director of Customs pursuant to the act of March 4, 1923 (ch. 251, 42 Stats. 1453), and requesting the Attorney General to advise "whether, under the authority contained in the act of March 4, 1923, the statutory duties and others of a similar character imposed upon the Secretary of the Treasury by the acts mentioned, may be delegated by him to the Director of Customs to be examined by the latter by direction of the Secretary."

In his letter the Secretary referred specifically to sections 161, 248, and 249 of the Revised Statutes, the act of December 18, 1890 (ch. 22, 26 Stat. 690), the Food and Drugs Act of June 30, 1906

(ch. 3915, 34 Stat. 768), section 201 of the Emergency Tariff Act of May 27, 1921 (ch. 14, 42 Stat. 9), and the Tariff Act of September 21, 1922 (ch. 356, 42 Stat. 858).

The Attorney General, responding to this request, reviewed the several statutes so called to his attention and speaking, first, of certain regulations called for under certain of these statutes said:

The making of regulations of this kind designed to have the force of law, to be binding upon the public, and to be recognized and enforced by the courts is, I think, a duty which the statutes place upon the Secretary personally.

The Attorney General then continued:

In my opinion the powers conferred upon the Secretary by section 201 of the act of May 27, 1921, the so-called antidumping provision, are intended to be personal to the Secretary, and the findings and their publication should have his personal approval.

So, too, I think the provisions of sections 616, 617, and 618 of the Tariff Act of September 21, 1922, relating to the compromise of claims and the abatement of fines, penalties, and forfeitures require the personal action of the Secretary. I think the powers and duties under the other provisions of law mentioned in your letter, and to which I have referred, may be delegated by you to your subordinates, as you may deem wise. Opinions of the Attorney General, folio 35, p. 15.

The act of March 4, 1923 (ch. 251, 42 Stat. 1453), was entitled:

An act to provide for the necessary organization of the Customs Service for an adequate administration of the Tariff Act of 1922 and all other custom revenue laws.

The first section of the act authorized the Secretary of the Treasury to appoint a Director of Customs and certain assistants and prescribe their duties "when not otherwise defined by law."

By an act of March 3, 1927, which was to take effect April 1, 1927, Congress provided for the creation of a Bureau of Customs in the Department of the Treasury. This act was in the nature of a substitute for the Act of March 4, 1923, *supra*, and gave to the Secretary substantially the same powers in the matter of reorganization of the Customs Service as were given in the former law. The Secretary, on March 18, 1927, issued his order, T. D. 42044, fixing the organization under the Act of March 3, 1927. Paragraph 4 of this order reads as follows:

All the rights, powers, privileges, or duties in respect of the importation or entry of merchandise into or exportation of merchandise from the United States vested in or imposed upon the Secretary of the Treasury by the Tariff Act of 1922, or any other law, are hereby conferred or imposed upon the Commissioner of Customs. The acts, findings, and decisions of said commissioner, with respect to said matters, shall be final so far as the Treasury Department is concerned unless modified or disapproved by the Secretary of the Treasury: *Provided*, That the determination of countervailing duties under section 303 of the Tariff Act of 1922, and findings of dumping under the Antidumping Act of 1921, and all amendments to the Customs Regulations shall not be effective unless approved by the Secretary of the Treasury.

Evidently the language of the proviso quoted, *supra*, was a recognition by the Secretary of the Treasury of the construction given the statutes by the Attorney General in the opinion of December 12, 1925, also quoted *supra*.

Nevertheless, the finding which is at issue in this case is not shown to have been made by the Secretary personally but appears from its text to have been the finding of "Edward Clifford, Assistant Secretary." It says, "after due investigation *I* find" (italics mine), and is signed by Mr. Clifford.

I do not think that it was the intent of Congress under section 201 (a), Antidumping Act of 1921, to authorize the Secretary of the Treasury to delegate the authority conferred upon him to make the findings therein provided for, even to an Assistant Secretary, nor do I find in the record, or in any official orders outside the record of which the court would be charged with judicial knowledge, where the Secretary attempted to do so. Neither can I agree with the theory that it was the intent of Congress, either by the Antidumping Act itself or when construing it in connection with other statutes, to confer this authority upon an Assistant Secretary by law, and so authorize him to act independently of the Secretary himself.

I have been unable from my analysis of the Antidumping Act of 1921 to arrive at any conclusion other than that there was conferred upon the Secretary by Congress an authority which called for the exercise of discretion—using that word in the legal sense—and that this distinguishes this case from the cases cited as authorities in the majority opinion, wherein the courts sustained as valid several orders issued by Assistant Secretaries. A close examination of the facts in those cases reveals, it seems to me, that the orders issued in them were purely ministerial or administrative, while the finding in the case at bar goes beyond this, and involves, to say the least of it, an admixture of fact and opinion, and I can not agree that in using the word "secretary" Congress intended it to be construed as generic in character so as to include other officials not specifically named and authorized to act.

To meet the requirements of section 201 (a) it must be found, first, that importations of merchandise are being made, which merchandise "is being sold or is likely to be sold in the United States or elsewhere at less than *its fair value*," and, second, that by reason of this importation "an industry in the United States *is being, or is likely to be injured, or is prevented from being established.*" (Italics mine.) Nowhere in the act does Congress give a definition of "fair value," nor is there in any other customs statute such a definition. Surely, in order to make a finding, there must be somewhere, in the mind of some person, a definite idea as to what constitutes the "fair value" of a given article and Congress not having defined it, the

duty of determining it devolves upon the Secretary of the Treasury, and, to my mind, the determination of this, as well as other matters contained in the quoted language, calls for the performance of more than a mere administrative or ministerial function.

It is largely because of the nature of the act to be performed that I am of the opinion that the intent of Congress in passing the Anti-dumping Act of 1921 was to have it performed by the Secretary personally, and expressly so provided. It is an act "designed to have the force of law, to be binding upon the public, and to be recognized and enforced by the courts" just as are the regulations referred to in the opinion of the Attorney General as requiring the Secretary's personal action.

It is legitimate and proper to look to the history of this legislation to aid in construing it and arriving at the intent of Congress by which this court must be guided. When a bill containing antidumping legislation was reported to the House from the Ways and Means Committee in 1921, it did not have the requirement for findings by the Secretary of the Treasury, but provided another method. After the bill had passed the House, the Senate committee amended this portion of it and the Senate agreed to the amendment which is the exact language of the law, 201 (a). The House concurred in the Senate amendment, and provided for the action to be taken by the "Secretary of the Treasury (hereinafter in this Act called the 'Secretary')." On a matter so important as I conceive this to be, I can not but feel that if Congress had intended to extend this power to Assistant Secretaries they would have said so in express words, and I can not reconcile myself to what seems to me to be a writing into the statute of words which the Congress itself did not insert, directly or indirectly.

It is evident from the history of this legislation, as same appears of record, that Congress exercised great care in drafting and considering it. This antidumping law was an innovation in customs legislation. It yet stands as an act to itself, independent of all other customs laws, and is the only one of five titles in the act of which it was a part which does so stand. The other titles have been repealed, modified, or carried into the Tariff Act of 1922. This remains as the only integral and untouched part of the act of 1921.

I agree with the opinion of the Attorney General, and believing that the Customs Court reached the correct conclusion think that its judgment should be *affirmed.*