THE UNITED STATES, APPELLANTS, *v.* HENRY CAMBUSTON.

The regulations for the colonization of the Territories of the Government of Mexico, made 21st November, 1828, in pursuance of the act of the General Congress, August 18, 1824, provided: 1st. That the Governors of the Territories should be empowered to grant vacant lands, among others, to private persons who may ask for them, for the purpose of cultivating and inhabiting the same. 2d. That every person soliciting lands shall address to the Governor a petition, expressing his name, country, and religion, and describing as distinctly as possible, by means of a map, the land asked for. 3d. The Governor shall proceed to obtain the necessary information, whether the petition contains the proper conditions required by the law of the 18th August, 1824, both as regards the land and the petitioner, in order that the application may be at once attended to; or, if it be preferred, the municipal authority may be consulted, whether there be any objection to the making of the grant. 4th. This being done, the Governor will accede or not to such petition, in conformity to the laws on the subject. 5th. The definitive grant asked for being made, a document, signed by the Governor, shall be given, to serve as a title to the party interested, wherein it must be stated that the grant is made in exact conformity with the provisions of the law; in virtue of which, possession shall be given. 6th. The necessary record shall be kept, in a book provided for the purpose, of all the petitions presented and grants made, with maps of the lands granted, and a circumstantial report shall be forwarded quarterly to the Supreme Government.

Where there was no evidence, with respect to a grant of land in California, that any one of these preliminary steps had been taken, this court cannot confirm the claim.

The decisions of this court in cases of claims to land in Louisiana and Florida are not applicable where precise and recent regulations exist, directing the manner in which land shall be granted.

There are also strong grounds of suspicion with respect to the *bona fides* of the grant in question; but as the claimant may not have had an opportunity of producing evidence in the court below, the case will be remanded to that court for further proceedings.

THIS was an appeal from the District Court of the United States for the northern district of California, which affirmed a decree of the land commissioners in favor of a grant of land to Cambuston.

The facts are stated in the opinion of the court.

It was argued by *Mr. Black* (Attorney General) for the United States, and *Mr. J. Mason Campbell* for the appellee.

*Mr. Black* made the following points:

1. Assuming the paper on which the claim is based to be genuine, it is, nevertheless, void and worthless, for want of a petition and inquiry.

2. The grant is inoperative, for want of evidence that it was delivered while the Governor had power to make it.

3. The grant is fraudulent, fictitious, and simulated.

*Mr. Campbell's* points were the following:

1. That the grant itself is evidence, as of the power of Pico

to make it, so also of the observance by him of all the necessary preliminaries, and that there is no proof to the contrary. (United States *v.* Peralta, 19 How., 347; United States *v.* Arredondo, 6 Pet., 729, 731; United States *v.* Delassus, 9 Pet., 134; Minter *v.* Crommelin, 18 How., 88; Bagnell *v.* Broderick, 13 Pet., 448.)

2. That the possession of the grant is evidence of its delivery to the grantee by Pico, and the presumption of law is that such delivery was made when it might be lawfully, and that there is no evidence to the contrary.

3. That the absence of an approval by the Departmental Assembly, or of a survey, &c., will not defeat the grant. (United States *v.* Fremont, 17 How., 560; United States *v.* Reading, 18 How., 7; United States *v.* Cruz Cervantes, 18 How., 553; United States *v.* Vaca, 18 How., 556; United States *v.* Larkin, 18 How., 563.)

4. As no allegation of fraud was made, either before the commissioners or before the District Court, it cannot be entertained in this court, though, if entertained, the circumstances of the case conclusively show the fairness of the transaction. (United States *v.* Larkin, 18 How., 557.)

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the District Court of the United States for the northern district of California, affirming a decree of the land commissioners.

The claimant below gave in evidence the following document, purporting to be a grant of a large tract of land on the upper waters of the Sacramento river, from a Mexican Governor of California, dated 23d May, 1846:

Pio Pico, Constitutional Governor of the Department of California:

Whereas Mr. Henry Cambuston has petitioned, for his own personal advantage, for a tract of unoccupied land in the valley of the Sacramento, joining on the north to Antonio Osio, on the south Mr. Sutter, on the east Mr. Flugge, and on the southwest the river Sacramento—the investigations being previously made according to the custom, and in conformity with the law of the 18th of August, 1824, and the regulations of the 21st of November, 1828—in virtue of the powers which have been conferred on me, in the name of the Mexican nation, I grant the tract of land expressed, lying out of the boundaries of the before-mentioned landholders, declaring it his estate by the present letters, provided it shall be approved by the extreme Departmental Assembly, and under the following conditions:

1st. He may, without prejudice to the crossings, roads, or attendances, fence it, enjoying it freely and exclusively, devoting it to any use or cultivation, as best may suit his convenience.

2d. When the title shall be confirmed, he shall demand of the respective judge judicial possession of it, by virtue of this despatch, by which the boundaries shall be designated with the necessary landmarks.

3d. The claim of land, for which this grant is made, has an area of eleven square leagues of pasture, if there is that outside of the property of the others, whose boundaries are to be respected; and if there should not be, the grantee shall be satisfied with that which remains.

The judge who gives possession shall cause it to be surveyed according to the ordinance, leaving the residue for the convenient uses of the nation.

Consequently, I command that he hold the present title as true and valid.

It shall be recorded in the respective book, and be delivered to the party interested, for his security and other uses.

Given in the city of Los Angeles, on this common paper, for want of sealed, on the 23d day of May, 1846.

(Signed)        PIO PICO.<br>(Signed)        JOSE MATIAS MORENO.

This document was deposited, by the claimant, with Edward Canbey, Assistant Adjutant General of the Army of the United States, on the 10th July, 1850, who at that time had charge at Monterey of the Government archives. These archives have since been transferred to the office of the Surveyor General, kept at San Francisco. There is no evidence in the case that it was ever seen in or out of the possession of the claimant, from its date (23d May, 1846) down to the time of depositing it, as above mentioned, except that derived from one witness, who appears to have been interested in the grant, and whose testimony, therefore, must be laid out of the case. Although the document in terms directs that it shall be recorded in the proper book of records, no record of the same was given in evidence, nor its absence accounted for. It recites, in the usual way, that the claimant had presented to the Governor a petition for a grant of the land, and also that the customary examinations had been made into the circumstances and fitness of making the grant to the petitioner. No petition was produced at the trial, nor any report by any officer as to the reasons and propriety of conceding the tract asked for, nor any evidence accounting for the non-production of either.

The case stands, so far as the claim of title is concerned, upon the naked document itself, purporting to be a donation of the eleven square leagues of land, together with evidence tending to establish its genuineness, and slight proof in respect to the possession of the tract.

The original document was not produced either before the commissioners or the District Court, and the only proof of its genuineness was the testimony of two witnesses who had seen the signatures of Governor Pico and the Secretary Moreno, on file at the Surveyor General's office. One of them (Crosby) says he believes the signature of Pico to be genuine, but has no knowledge of the handwriting of Moreno; the other, (Castro,) that he knows the signatures of both Pico and Moreno, and that they are genuine. There is another witness, (Morenhont,) who says that he had seen Moreno write once, and had corresponded with him; and that, so far as he can judge, it is his genuine signature. This witness, however, cannot be relied on, as he is the person interested in the claim.

The regulations for the colonization of the territories of the Government of Mexico, made 21st November, 1828, in pursuance of the act of the General Congress, August 18, 1824, provided: 1st. That the Governors of the territories should be empowered to grant vacant lands, among others, to private persons who may ask for them, for the purpose of cultivating and inhabiting the same. 2d. That every person soliciting lands shall address to the Governor a petition, expressing his name, country, and religion, and describing as distinctly as possible, by means of a map, the land asked for. 3d. The Governor shall proceed to obtain the necessary information, whether the petition contains the proper conditions required by the law of the 18th August, 1824, both as regards the land and the petitioner, in order that the application may be at once attended to; or, if it be preferred, the municipal authority may be consulted, whether there be any objection to the making of the grant. 4th. This being done, the Governor will accede or not to such petition, in conformity to the laws on the subject. 5th. The definitive grant asked for being made, a document signed by the Governor shall be given, to serve as a title to the party interested, wherein it must be stated that the grant is made in exact conformity with the provisions of the law in virtue of which possession shall be given. 6th. The necessary record shall be kept, in a book provided for the purpose, of all the petitions presented and grants made, with maps of the lands granted, and a circumstantial report shall be forwarded quarterly to the Supreme Government. There are many other provisions in the system of

regulations, relating to the disposition of the public lands, adopted on the 18th November, 1828, which it is not at present material to notice. Those specified have a special bearing upon the case before us. And, in view of them, it will be observed, according to the facts as presented at the trial before the commissioners, and afterwards before the District Court, to which we have already referred at large, that not one of the preliminary steps made requisite by the act of the Mexican Congress of 1824, and the regulations of 1828, to a grant of the public domain by the Governors, has been observed; at least, no evidence was given, before either of these tribunals, of the observance of any one of them. And we do not see how they can well be dispensed with, as they are not only expressly prescribed by the regulations as essential to guard against improvident grants, but constitute an essential part of the record of the title. It is true, the document recites that a petition was presented, and that the customary investigations had been made in respect to the application. But this cannot be regarded as conclusive, or even satisfactory evidence of these facts, when the question is raised, whether or not the alleged grant is made in conformity with the requirements of the law— in other words, whether the preliminary conditions had been complied with, which enabled the Governor in the particular case to make the grant, especially in respect to those preliminary proceedings which are required to be made matters of record, and of which record evidence should have been produced, or its non-production satisfactorily accounted for.

The question here is not whether the fact of the habitual grant of lands by Mexican Governors of the Territory of California to settlers, and, also, whether the customary mode and manner adopted in making grants, do not furnish presumptive evidence both of the existence of the power and of a compliance with the forms of law in the execution? We agree, that the affirmative of these questions has been frequently determined by this court, in cases involving Spanish titles in the Territories of Louisiana and Florida. (6 Peters, 729, 731; 9 ib., 134; 19 How., 347.) But no such presumptions are necessary or admissible in respect to Mexican titles granted since the act of 18th of August, 1824, and the regulations of 21st November, 1828. Authority to make the grants is there expressly conferred on the Governors, as well as the terms and conditions prescribed, upon which they shall be made. The court must look to these laws for both the power to make the grant, and for the mode and manner of its exercise; and they are to be substantially complied with, except so far as modified by the usages and customs of the

Government under which the titles are derived, the principles of equity, and the decisions of this court. (17 How., 542.)

We think, for the reasons above stated, that the case in the court below was too defective to have warranted a confirmation of the title to the claimant, as it was unsupported by the evidence; and also, for the further reason, for aught that appears in the proofs, the alleged grant has never been recorded in the proper book, or, indeed, in any book of the Spanish records. This is expressly required by the regulations of November, 1828, and enjoined in the grant itself. The record should have been produced, or its non-production reasonably accounted for.

In the examination of the evidence in this case, we have found it very difficult to resist a suspicion as to the *bona fides* of the grant in question. It is a pure donation, without pecuniary consideration or meritorious services rendered to the Government of Mexico. It is unaccompanied, as we have seen, with the forms and usages always observed in disposing of the public lands. Although purporting to be made on the 23d May, 1846, it was unknown to any person besides the grantee himself, and another interested party, till filed among the public archives, 10th July, 1850, after the cession of California, by Mexico, to this Government. It was made but a month and a half before the country was taken possession of by the arms of the United States, and made by a person who had but recently expelled from the Territory by force its lawful Governor, (Micheltorena,) and taken possession of it himself. Whether or not Pico had been recognised by the existing Government in Mexico, at the time the grant is dated, does not appear. Micheltorena was overthrown by the joint forces of Castro and Pico, in the spring or fore part of the summer of 1845. (See Captain Sutter's evidence, in original record in Reading's case, 18 How., p. 1; also, Report of General Cass to Senate, on California Claims, February 23, 1848.)

Civil commotion raged throughout the Territory, from this period down to the 7th July, 1846, when the authority of Pico and Castro themselves was subverted, and possession taken and held by the arms of the United States, until the cession of the country to this Government by the treaty of Guadalupe Hidalgo.

The grant purporting to have been made by Pico, so near the time when the Government of the Territory had passed from his hands, and, indeed, during the very heat and conflict of the struggle in which his power was overthrown, it, and all others similarly situated, should be inquired into and scrutinized with great care, both as to the authority of the Governor

to make them, and the *bona fides* of its exercise, in order to prevent imposition and frauds.

. The court below appears to have been very much pressed with the unsatisfactory character of the evidence, and with doubts as to the genuineness of the title, and seems to have yielded rather to the apparent acquiescence of the representative of the Government, in the decision of the commissioners, than to any settled convictions of its own judgment.

We should not hesitate to reverse the decree below, and direct a decree against the claimant, were it not that the mode and manner of conducting the case, both before the commissioners and the District Court, on behalf of the Government, may have misled him; for, if the objections here stated had been made at the proper time before either of the tribunals, it may have been in his power to have removed them by the introduction of further evidence. It would be unjust, therefore, to deprive him, under the circumstances, of the opportunity to furnish such evidence.

We shall therefore reverse the decree, and remand the case to the court below for a further hearing.