PERRY et al. v. PAGE, Collector of Internal Revenue.

No. 2843.

Circuit Court of Appeals, First Circuit.

Nov. 10, 1933.

636

James F. Armstrong, of Providence, R. I. (Chauncey E. Wheeler, and Hinckley, Allen, Tillinghast, Phillips & Wheeler, all of Providence, R. I., on the brief), for appellants.

F. F. Korell, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., E. Barrett Prettyman, Gen. Counsel, and S. E. Blackham, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before WILSON, MORTON, and ANDERSON, Circuit Judges.

WILSON, Circuit Judge.

This is an appeal from judgment of the District Court of Rhode Island in a suit by the plaintiffs as trustees of the estate of the late Frank B. Hazard to recover a sum alleged to have been erroneously assessed and collected of the plaintiffs as income taxes for the year 1927. Jury trial was waived.

The District Court found that the tax was erroneously assessed and collected as the income of the estate was, by the will of the deceased, to be used exclusively for charitable purposes. The defense was that a closing agreement, so called, under section 606 of the Revenue Act of 1928 (26 USCA § 2606), which it sets forth in its plea, was duly approved by the Secretary of the Treasury.

The plaintiffs in reply set up in avoidance of the effect of the agreement that (1) since the government was without right to assess and collect the tax, there was no consideration on its part for the agreement of the taxpayers that they would not claim any refund; and (2) the agreement was never approved by the Secretary of the Treasury or the Undersecretary, as required by section 606; and (3) that it was entered into through malfeasance and misrepresentation of the Commissioner of Internal Revenue.

The District Court made a special finding that there was no malfeasance or misrepresentation on the part of the Commissioner. The only issues left were whether there was consideration for the agreement, and, if so, or none was required, whether the agreement was approved by the Secretary of the Treasury or some one duly authorized to act for him. It appears that it was approved by Henry Herrick Bond, Acting Secretary.

We think the District Court correctly found that since the government had no right to collect the tax, it gave up nothing by entering the agreement and there was no consideration on its part, if the agreement is to be treated as a contract.

The government cannot be sued without its consent. It may extend or shorten the period within which a suit may be brought. The former may be done by agreement. The right of a taxpayer to sue to recover an alleged overpayment, under section 606 of the Revenue Act of 1928 (26 USCA § 2606), may be ended by a closing agreement. As to the finality of such agreements, section 606 provides:

"(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

"(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

If entered into between the taxpayer and the Commissioner voluntarily, and approved by the Secretary of the Treasury or Undersecretary, its effect is regulated by statute and takes on legal consequences by virtue of the statute, and not under the law of contracts, but under well-settled principles of law which permit a sovereign state to control and designate when and under what conditions it may be sued. The legislative determination of these conditions is final, and is not dependent upon a consideration as in case of a release of claims under the law of contracts. Ætna Life Ins. Co. v. Eaton (C. C. A.) 43 F.(2d) 711, 714; Bankers' Reserve Life Co. v. United States (Ct. Cl.) 42 F.(2d) 313, 316. In the former case the court said:

"We are clear that by the closing agreement the parties in fact intended to settle all questions relating to the validity of the assessments for 1923 and 1924, and that, irrespective of this, the Revenue Act made the agreement a statutory bar."

And in the latter:

"Congress thus expressly authorized the parties by agreement to shorten the period of limitation for the determination, assessment, and collection of a tax and for the filing of

claims for refund, abatement, credit,. and the institution of suit for the recovery of the amount paid."

■ The statute, section 606, is, we think, conclusive as to the effect of such agreements.

The only question left for consideration is whether such an agreement approved by an Acting Secretary is valid when the statute requires such agreement to be approved by the Secretary or Undersecretary.

The taxpayers contend that since the statute expressly provides that only the Secretary and Undersecretary may sign, it was the intent of Congress that no other official could sign or act for the officials named. It is argued that because the act when originally proposed in the House of Representatives contained only the name of the Secretary as an official who could approve such agreements, and the Senate amended by inserting the name of the Undersecretary, or an Assistant Secretary, but before the final passage the provision for the approval of an Assistant Secretary was stricken out, therefore only the officials left in, namely, the Secretary or Undersecretary, could approve such agreements.

The agreement was not approved by an Assistant Secretary acting as such; but by Henry Herrick Bond, Acting Secretary of the Treasury. The case is settled by determining whether an Assistant Secretary may act as Secretary.

Section 4 of title 5, USCA provides:

"In case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall, unless otherwise directed by the President, as provided by section 6 of this title, perform the duties of such head until a successor is appointed, or such absence or sickness shall cease."

In John Shillito Co. v. McClung (C. C. A.) 51 F. 868, 871, the court said:

"It having been found impossible for the heads of departments to perform, in person, all the duties imposed on them by law, the office of assistant secretary was created for all the departments. In the treasury department, two of such assistant secretaries are required to be appointed by the president, by and with the advice and consent of the senate. 'The assistant secretaries of the treasury shall examine letters, contracts, and warrants prepared for the signature of the secretary of the treasury, and perform such other duties in the office of the secretary of the treasury as may be prescribed by the secretary or by law.' Section 245, Rev. St. [5 USCA § 247].

By section 161, Id. [5 USCA § 22], 'the head of each department is authorized to prescribe regulations, not inconsistent with the law, for the distribution and performance of its business;' and 'in case of the death, resignation, absence, or sickness of the head of any department, the first or sole assistant thereof shall, unless otherwise directed by the president, as provided by section 179 [5 USCA § 6], perform the duties of such head until a successor is appointed or such absence or sickness shall cease.' Section 177, Id. [5 USCA § 4]. * * * It admits of no question that under the foregoing provisions the secretary of the treasury could have assigned to the assistant secretary or secretaries of the treasury department the duty of deciding appeals from assessments made by collectors of customs duties; nor can it be doubted that, in the absence or sickness of the head of that department, such assistant secretaries could have lawfully performed his duties in respect to such matters which have to be determined, settled, and adjusted in that department. The reply does not negative the fact that the assistant secretary was not assigned by the secretary of the treasury to the performance of the duty of deciding the appeal, nor that there was no absence or sickness of the head of the department which devolved the duty upon the assistant secretary. Under such circumstances, is the want of authority to be assumed, or will the law raise a presumption to the contrary in support of the official act? We are clearly of the opinion that the latter is the rule to be applied." United States v. Peralta, 19 How. 347, 15 L. Ed. 678; Parish v. United States, 100 U. S. 500, 25 L. Ed. 763; Chadwick v. United States (C. C.) 3 F. 750, 756; United States v. Adams (C. C.) 24 F. 348.

Also see Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; Bowling v. United States (C. C. A.) 299 F. 438; Ex Parte Tsuie Shee et al. (D. C.) 218 F. 256; In re Jem Yuen (D. C.) 188 F. 350; Marsh v. Nichols, Shepherd & Co., 128 U. S. 605, 9 S. Ct. 168, 32 L. Ed. 538; Norris v. United States, 257 U. S. 77, 42 S. Ct. 9, 66 L. Ed. 136.

In United States v. Adams (C. C.) 24 F. 348, it was held that where authority is given for the head of a department to prescribe the duties to be performed by an assistant, or where the law provides that in case of certain conditions arising, such as death, resignation, absence, or sickness, an assistant shall, unless otherwise directed by the President, perform the duties of the head of the department until the disability of the head ceases, and it appears that if an assistant has

to perform such duties as Acting Secretary, the presumption is, unless the contrary is made to appear, that the conditions named in the statute had arisen, or that the head of the department had prescribed the duties to be performed by the assistant, who was acting according to the directions and with the authority of the head of his department. Rev. St. §§ 245, 161 and 177 (5 USCA §§ 247, 22, 4).

In Chadwick v. United States (C. C.) 3 F. 750, 756, the court said:

"Assistant secretaries in the treasury department are appointed under the authority of an act of congress, with power to perform such duties in the office of the head of the department as he may prescribe, or as the law directs. * * * Rev. St. § 245 [5 USCA § 247]. Extensive duties are assigned to such, and in case of the death, resignation, absence, or sickness of the secretary, the proper assistant is required by law, unless otherwise directed by the president, to perform all the duties of the department until a successor is appointed, or such absence or sickness shall cease. Rev. St. § 177 [5 USCA § 4]. Nothing appearing to the contrary, the legal presumption is that the certificate was made in pursuance of a lawful authority, and, being under the seal of the department, it is sufficient to show that the ruling of the court is correct."

We think the rule must be applied here and the presumption is that when Henry Herrick Bond approved the settlement agreement in this case as Acting Secretary, the Secretary of the Treasury was either absent from Washington or was ill, or had specifically assigned this duty to him, in which case the first Assistant Secretary was authorized to act for him, and could approve the agreement as Acting Secretary.

The agreement, therefore, must be held to be binding on both parties and by force of section 606 prevents the plaintiffs from recovering against the Collector in this case.

The judgment of the District Court is affirmed.