ANDERSON, Collector of Internal Revenue, v. P. W. MADSEN INV. CO.

No. 1037.

Circuit Court of Appeals, Tenth Circuit.

Aug. 18, 1934.

tion of its tax liability for 1926, fixing it at $19,613.66. On December 28, 1928, H. F. Mires as Acting Commissioner signed the agreement, and on December 31, 1928, it was approved by Henry Herrick Bond as Acting Secretary of the Treasury. On January 3, 1929, the Commissioner forwarded one copy of the agreement to the Madsen Company.

In its return the Madsen Company included $97,340 received as dividends from a building and loan association.

In United States v. Cambridge L. & B. Co., 278 U. S. 55, 49 S. Ct. 39, 73 L. Ed. 180, decided November 19, 1928, the court held that earnings of a building and loan association were exempt under the provisions of section 231 (4), Revenue Act 1926, 26 US CA § 982 (4). It follows that the dividends returned were deductible under section 234 (a) (6), Revenue Act 1926, 26 USCA § 986 (a) (6).

The Madsen Company filed a claim for a refund of $13,040.90 setting forth that there was included in its return $97,340 received as dividends from a building and loan association, which should have been allowed as a deduction. After more than six months had elapsed without any action being taken on the claim, this action was filed to recover $13,040.90, as an overpayment.

In his answer the Collector pleaded the closing agreement as a defense.

In its reply the Madsen Company alleged that the closing agreement was executed by it because of certain representations made by an internal revenue agent which were contrary to fact and law, that it was not executed in accordance with section 606, Revenue Act 1928;[1] and that it lacked the necessary prerequisites prescribed by that section.

Mires was not authorized in writing by the Commissioner to execute the agreement.

At the trial the Collector offered the clos-

S. E. Blackham and Wm. B. Waldo, Sp. Assts. to the Atty. Gen. (Frank J. Wideman, Asst. Atty. Gen., Sewall Key, Sp. Asst. to the Atty. Gen. and Dan B. Shields, U. S. Atty., of Salt Lake City, Utah, on the brief), for appellant.

John Enrietto, of Washington, D. C. (Chas. D. Hamel, Alan E. Gray, and Hamel, Park & Saunders, all of Washington, D. C., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

On March 14, 1927, the Madsen Company filed its income tax return for the year 1926. On September 28, 1928, it executed and delivered to the Collector of Internal Revenue a closing agreement as to the final determina-

[1] Section 606, Revenue Act 1928 (45 Stat. 874 [26 USCA § 2606]) provides:

"(a) Authorization. The Commissioner (or any officer or employee of the Bureau of Internal Revenue, including the field service, authorized in writing by the Commissioner) is authorized to enter into an agreement in writing with any person relating to the liability of such person * * * in respect of any internal-revenue tax for any taxable period ending prior to the date of the agreement.

"(b) Finality of Agreements. If such agreement is approved by the Secretary or the Undersecretary, within such time as may be stated in such agreement, or later agreed to, such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact—

"(1) the case shall not be reopened as to the matters agreed upon or the agreement modified, by any officer, employee, or agent of the United States, and

"(2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded."

ing agreement in evidence. The trial court held that, absent an authorization in writing by the Commissioner to an officer or employee of the bureau, only the Commissioner could execute the agreement and only the Secretary or Under-secretary could approve it, and rejected the offer.

Judgment for the Madsen Company followed, and the Collector appealed.

 To be valid a closing agreement must be entered into in accordance with the formal requirements of section 606, supra. Botany Worsted Mills v. United States, 278 U. S. 282, 288, 289, 49 S. Ct. 129, 73 L. Ed. 379. When a statute limits a thing to be done in a particular manner, it includes the negative of any other mode. Botany Worsted Mills v. United States, supra; Raleigh, etc., R. Co. v. Reid, 13 Wall. 269, 270, 20 L. Ed. 570.

It is plain that Congress did not intend to entrust the making of closing agreements, which preclude both the taxpayer and the government from thereafter reopening the case as to matters agreed upon, except upon a showing of fraud or malfeasance or misrepresentation of a material fact, to the action of subordinate officials in the bureau.

Does the statute prescribe that only the Commissioner may execute such an agreement or designate in writing an officer or employee of the bureau to do so, and that only the Secretary or Under-secretary may approve such an agreement? Or may one who is authorized to perform the duties of Commissioner during a vacancy in that office or during the absence or inability of the Commissioner to act, during the existence of one of those conditions, execute the agreement; and may one who is authorized to perform the duties of Secretary or Under-secretary during a vacancy in those offices or during the absence or inability of such officers to act, during the existence of one of those conditions, approve such an agreement?

 While the Congress intended to make formal action by the head of the bureau or department essential to the validity of such agreements, and to definitely fix the responsibility therefor, we do not think it intended that times should exist when, because of vacancies in the offices of Commissioner, Secretary, and Under-secretary, or in the absence of such officials, the department would be unable to execute or approve such agreements. Vacancies do occur in those offices, and there are times when such officers are absent or ill, or unable to act. The Congress provided that in such cases, as we shall presently see, subordinates may act in their place and stead, and exercise their authority and perform their duties. Such persons become temporarily the Commissioner and Secretary, and are invested with their powers, including the authority to execute and approve closing agreements.

Rev. St. § 322 in part reads as follows:

"There shall be in the office of the Commissioner of Internal Revenue a Deputy Commissioner. * * * "

Rev. St. § 323 reads as follows:

"The Deputy Commissioner of Internal Revenue shall be charged with such duties in the office of the Commissioner of Internal Revenue as may be prescribed by the Secretary of the Treasury, or by law, and shall act as Commissioner of Internal Revenue in case of the absence of that officer."

See acts of March 3, 1863 (12 Stat. 725), June 30, 1864 (13 Stat. 224), and July 13, 1866 (14 Stat. 170).

Under the latter section the Deputy Commissioner became Acting Commissioner during the absence of the Commissioner.

The act of January 29, 1874 (18 Stat. 6) provided:

"That the office of Deputy Commissioner of Internal Revenue, made vacant by the death of General B. J. Sweet, be, and the same is hereby abolished; and that the Secretary of the Treasury may, upon the recommendation of the Commissioner of Internal Revenue, designate one of the two remaining deputy commissioners as First Deputy Commissioner, who shall perform the duties and be paid only the salary prescribed for the office of deputy commissioner hereby abolished."

This act abolished the office of Deputy Commissioner, and delegated the duties of that office to the First Deputy Commissioner.

The act of October 3, 1913 (38 Stat. 180) provided for an additional Deputy Commissioner, bringing the number up to three.

The Act of October 6, 1917 (40 Stat. 348 [26 USCA § 4]) reads in part as follows:

"The Commissioner of Internal Revenue may assign to deputy commissioners such duties as he may prescribe, and the Secretary of the Treasury may designate any one of them to act as Commissioner of Internal Revenue during the Commissioner's absence."

After the passage of the last mentioned act, any Deputy Commissioner designated so to do by the Secretary, could act as Commissioner during the latter's absence.

On February 24, 1919 (40 Stat. 1140 [26 USCA § 3 and note]) Congress provided that:

"Hereafter there may be employed in the Bureau of Internal Revenue, in lieu of the deputy commissioners, * * * five deputy commissioners and an assistant to the Commissioner. * * * *".

This act was in part superseded by section 1201 (b) of the Revenue Act of 1926 (44 Stat. 126 [26 USCA § 1a, subd. (b)]), which in part provides:

"There shall be in the Bureau of Internal Revenue the following officers who shall be appointed by the President, by and with the advice and consent of the Senate. * * *

"(2) One assistant to the commissioner who shall receive a salary at the rate of $8,-000 per annum. The office of assistant to the commissioner provided by existing law is abolished to take effect at such time as the assistant to the commissioner first appointed under this section takes office."

On July 23, 1868 (15 Stat. 168), 5 USCA § 5, Congress passed an act which reads in part as follows:

"In case of the death, resignation, absence, or sickness of the chief of any bureau, or of any officer thereof, whose appointment is not vested in the head of the department, the assistant or deputy of such chief or of such officer, or if there be none, then the chief clerk of such bureau, shall, unless otherwise directed by the President, as provided by section 6 of this title, perform the duties of such chief or of such officer until a successor is appointed or such absence or sickness shall cease."

It was clearly the purpose of the Congress in passing this act so to provide, that at all times there should be someone to exercise the authority and perform the duties of the head of a bureau.

We are inclined to the opinion that the acts above set out, dealing specifically with the Bureau of Internal Revenue, would take precedence over this general act, and that the latter would apply only to situations not provided for by such specific acts. However, that question is not here presented, and need not be decided.

Under the general act the assistant to the Commissioner could act as Commissioner during the latter's absence. Under the specific acts any deputy commissioner, designated by the Secretary of the Treasury so to do, could act as Commissioner during the latter's absence. See Act of October 6, 1917 [26 USCA § 4]. The office of first deputy having been abolished, in the absence of such a designation, the specific acts would not cover the situation, and the general act would apply.

There is no proof in the record that the Commissioner was not absent at the time in question, or that a First Deputy Commissioner had ever been designated by the Secretary to act as Commissioner during the latter's absence. There is a presumption of authority for official action rather than want of authority, and where the statute prescribes conditions under which the subordinate may act as head of a bureau and the subordinate acts as such, the existence of those conditions will be presumed in the absence of a contrary showing. Perry v. Page (C. C. A. 1) 67 F. (2d) 635; United States v. Peralta, 19 How. 343, 347, 15 L. Ed. 678; United States v. Chemical Foundation (D. C. Del.) 294 F. 300, 326; Young v. Wempe (C. C. Cal.) 46 F. 354; United States v. Royer, 268 U. S. 394, 398, 45 S. Ct. 519, 69 L. Ed. 1011; MacKusick v. Johnson (C. C. A. 1) 3 F.(2d) 398, 401; Keyser v. Hitz, 133 U. S. 138, 146, 10 S. Ct. 290, 33 L. Ed. 531; United States ex rel. Petach v. Phelps (C. C. A. 2) 40 F.(2d) 500.

Furthermore after Congress provided for an assistant to the Commissioner, to be appointed by the President and confirmed by the Senate, it is reasonable to presume that the Secretary would leave to him the performance of the duties of Commissioner during the latter's absence, and would not designate a subordinate deputy to perform such duties. We must presume therefore on this record that Mires had authority to execute the closing agreement as acting Commissioner. Perry v. Page (C. C. A. 1) 67 F.(2d) 635; Semmes v. United States (Ct. Cl.) 6 F.Supp. 119.

In Perry v. Page, supra, the court in a well considered opinion, held that Bond as Acting Secretary of the Treasury had authority under the provisions of 5 USCA §§ 4 and 22, to approve a closing agreement during the absence or illness of the Secretary, and that such absence or illness would be presumed in the absence of a showing to the contrary. We agree with the views therein expressed. See, also, Semmes v. United States (Ct. Cl.) 6 F. Supp. 119.

We conclude that the action of the Acting Secretary must be presumed to have been lawful and regular until the contrary is shown.

The cause is reversed and remanded for a new trial.