**UINTA LIVESTOCK CORPORATION, a**
Wyoming corporation, Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**Civ. No. 4654.**

United States District Court
D. Wyoming.

Aug. 3, 1964.

C. Preston Allen, of Ray, Quinney &
Nebeker, Salt Lake City, Utah, and James
L. Applegate, of Hirst & Applegate,
Cheyenne, Wyo., for plaintiff.

Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., and Burton A. Schwalb, Atty., Tax Division, Dept. of Justice, Washington, D. C., for defendant.

KERR, District Judge.

This is an action for the recovery of $88,330.27 paid for income taxes assessed and collected under the 1939 Internal Revenue Code for the taxable year ended December 31, 1948. The disputed tax liability involves the question of whether plaintiff was taxable on its transfer of Rees Land and Livestock Company stock in return for part of that company's assets, and if so, what is the proper basis of that stock for income tax purposes. The preliminary issue of the effect of the execution of Form 870–AD must first be determined by this Court.

Before stating the facts in detail this summary is given to focus the issues involved. Uinta Livestock Company was organized in October 1948 for the purpose of acquiring part of the assets of the original family-controlled company, the Rees Land and Livestock Company. Prior to the split-off, the six shareholders of Uinta Livestock Company were among the nine shareholders of Rees Land and Livestock Company. A stock exchange was made by these shareholders in November 1948 and the redemption of the stock for the assets occurred in December 1948. Except for these transactions plaintiff conducted no business during 1948. Neither did it file an income tax return for that year.

Some time in 1952 the Internal Revenue Service commenced its inquiry concerning the surrender of Rees Land and Livestock Company stock in exchange for the Uinta Livestock Corporation stock. In May 1955, the Internal Revenue Service prepared and filed a tax return for plaintiff showing capital gain of $323,-652.06, a tax liability of $87,965.56, and a delinquency penalty of $21,991.39 for failure to file a return. Upon examination by the revenue agent, it was determined that Uinta's surrender of the Rees stock in exchange for part of the assets of the Rees Land and Livestock Company amounted to a sale of stock, and therefore the taxpayer was liable for income tax on a gain realized thereby. A tax was imposed on the basis of the receipt of the assets having a value in excess of the basis of the stock.

After many negotiations, discussions, and protests, plaintiff executed Treasury Form 870–AD agreeing to accept and pay a tax deficiency of $67,386.61. Accordingly, it made the following payments in an effort to discharge that tax debt: $20,-000 on November 4, 1956, $5,000 on December 16, 1957, $5,000 on December 15, 1958, and $83,330.27 on December 10, 1959. The $25,000 payments made in 1956 and 1957 are not claimed by plaintiff because the statute bars the claim for their recovery. On or about July 1, 1960, plaintiff filed its claim for a refund which was denied on May 28, 1962. This suit followed.

The determination of whether the taxpayer is estopped or barred from asserting its claim for a refund hinges on the facts and circumstances leading to the execution of the 870–AD agreement. The Rees Land and Livestock Company was organized in 1911 as a Utah corporation. Its authorized capital was $75,000 comprised of 750 shares of common stock of $100 par value per share. On November 15, 1948, just prior to the stock transfer, William Rees and his five children owned 358 shares, Raymond Rees and his two sons owned 274 shares, and 118 shares were retained by the Company. Ownership of the stock was not as a family unit, though reference is made to the William Rees family and to the Raymond Rees family for convenience of identification.

Due to the separate interests of the two families, the location of the ranching properties, and the type of livestock handled, there was a logical division of operations. The ranch land was located in Utah where the cattle wintered. The range land was located in Uinta County, Wyoming, where the sheep were kept. William Rees and his sons and daughters owning approximately 57% of the outstanding Rees Company stock, were interested primarily in the sheep business;

and Raymond Rees and his two sons, who, collectively, owned approximately 43% of the outstanding Rees Company stock, ran the cattle business. In 1948, it was decided and agreed that the two families should separate; that Raymond Rees and his two sons would continue to operate the Rees Land and Livestock Company, which would run the cattle business; and that William Rees and his five children would start a new company to which the Rees Company would transfer its assets pertaining to the sheep business. It was agreed that the William Rees family would own all the stock in the new company and the Raymond Rees family would be the sole stockholders of the original Rees Company.

To effect the separation of the cattle and sheep interests, William Rees and his sons organized the Uinta Livestock Corporation on October 8, 1948, under the laws of Wyoming. Its authorized capital was $100,000 comprised of 1,000 shares of $100 par value stock. For reasons not appearing on the record, the following steps were agreed upon to divide the Rees Company assets and to consolidate the Rees Company stock. Both parties refer to two transactions: the stock exchange and the stock redemption. William Rees and his sons and daughters agreed to transfer their Rees Company stock to the Uinta Livestock Corporation in return for all the stock of that new company. Thereupon, Uinta Livestock Corporation would exchange the Rees Company stock for the Rees Company assets pertaining to the sheep business. The purpose and desired results of this transaction was that on and after January 1, 1949, Raymond Rees and his sons, Wayne and Gordon, would own their 274 shares of Rees Company stock, the Rees Company would retain its 118 shares of unissued stock, and hold also the 358 shares of Rees Company stock formerly owned by William Rees and his family. Raymond Rees and his sons would thereafter own and continue to operate the cattle business in Utah. It was also the purpose of the transaction that on and after January 1, 1949, the Uinta Livestock Corporation would own and operate the sheep business, and that its 1000 shares of stock would be owned by William Rees and his sons and daughters. The following outline shows the number of shares held by the two families in the two corporations:

| REES LAND & LIVESTOCK COMPANY 750 authorized shares | | | UINTA LIVESTOCK CORPORATION 1,000 authorized shares |
| --- | --- | --- | --- |
| Ownership on 11/15/48 and Transfers on 11/15/48 | | | Ownership after the 11/15/48 transfer |
| Unissued shares | 118 | (15% of authorized stock) | —— |
| Raymond Rees & Sons | 274 | (37% of authorized stock, or 43% of outstanding stock) | —— |
| William Rees | 65 | | 152 |
| Dale Porter Rees | 60 | | 209 |
| William J. Rees | 95 | | 256 |
| Dorothy Rees Gill | 66 | | 180 |
| Lucille Rees Dean | 47 | | 129 |
| Joyce Rees Dunlap | 25 | | 74 |
| SUB-TOTAL: | 358 | (48% of authorized stock or 57% of outstanding stock) | TOTAL: 1,000 or 100% of stock |

The proportionate interests of the shareholders prior to and resulting from the exchange of stock have been disputed. As is usual, figures may be manipulated; formulas may vary. Because of the testimony at the trial of this case and my construction of the facts and application of the legal principles thereto, it is not necessary for this Court to belabor this phase of the case. Suffice it to list the following percentages:

### PROPORTIONATE INTERESTS OF THE WILLIAM REES FAMILY

| | IN THE REES COMPANY STOCK | IN THE UINTA CORPORATION STOCK |
|---|---|---|
| | Of the 358 shares transferred by Wm. Rees, et al. | Of the 1000 shares received by William Rees, et al. |
| William | 18.15% | 15.28% |
| Dale | 16.76% | 20.88% |
| William J. | 26.54% | 25.57% |
| Dorothy | 18.43% | 17.99% |
| Lucille | 13.15% | 12.89% |
| Joyce | 6.97% | 7.39% |
| TOTALS | 100.00% | 100.00% |

Plaintiff has not proved to the satisfaction of this Court that the exchange of Uinta stock for Rees stock was anything more or less than an exchange of equivalent or corresponding interests. The consideration received by William Rees and his family from Uinta for the transfer of their Rees stock to Uinta, represented a continuation of their original holdings in Rees. There is no convincing evidence that the transferors' circumstances differed before and after the exchange. When the Rees shareholders separated from Rees and became the sole shareholders of Uinta they received substantially the same proportionate interest in Uinta which they had held in Rees.

Plaintiff contends that Form 870-AD does not prevent the recovery by Uinta of the tax unlawfully assessed against it which it has paid; that such form is not a binding agreement because it does not satisfy the statutory requirements for a compromise or closing agreement; and that it does not bar plaintiff from, nor is plaintiff estopped from filing and prosecuting its claim for a refund of the tax allegedly unlawfully assessed and collected.

Defendant urges that the taxpayer's suit is barred because of the execution of Treasury Form 870-AD and the acceptance of that offer on behalf of the Commissioner of Internal Revenue. Defendant argues that this form constitutes a final closing agreement, or a settlement agreement which closed the case for all time and is a bar to an action for a refund. In the alternative, defendant contends that if the Form 870-AD is not a bar per se to future claims for tax refunds, plaintiff is nevertheless estopped from prosecuting its refund claim because the Government made concessions under the Form and relied thereon to its detriment and to the taxpayer's advantage.

The material portions of Treasury Form 870-AD are reproduced as follows:

"OFFER OF WAIVER OF RESTRICTIONS ON
ASSESSMENT AND COLLECTION OF DEFICIENCY IN TAX
AND ACCEPTANCE OF OVER-ASSESSMENT."

"Name of Taxpayer: Uinta Livestock Corporation

Address: P. O. Box 1216 Lyman, Wyoming

FOR INTERNAL REVENUE USE ONLY.

"Date Accepted for Commissioner. Signature
 w/Aug. 23, 1956 w/J. B. Harlacher–DEW

Title Asst. Regional Commissioner, Appellate

Office Salt Lake City

Pursuant to the provisions of section 6213(d) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Internal Revenue Code of 1954, or corresponding provisions of prior internal revenue laws, and to consent to the assessment and collection of the following deficiencies with interest as provided by law. The undersigned offers also to accept the following over-assessments as correct:

## DEFICIENCIES

| Income Tax | Taxable Year Ended | Tax: | Penalty: | Total: |
|---|---|---|---|---|
| | Dec. 31, 1948 | $67,386.61 | None | $67,386.61 |

\* \* \* This offer is subject to acceptance by or on behalf of the Commissioner of Internal Revenue. It shall take effect as a waiver of restrictions on the date it is accepted. Unless and until it is accepted, it shall have no force or effect.

If this proposal is accepted by or on behalf of the Commissioner, the case shall not be reopened in the absence of fraud, malfeasance, concealment or misrepresentation of material fact, or an important mistake in mathematical calculation; and no claim for refund shall be filed or prosecuted for the year above stated other than for the amounts of overassessment shown above. The taxpayer also agrees to make payment of the above deficiencies, together with interest, as provided by law, promptly upon receipt of notice and demand from the District Director of Internal Revenue.

s/UINTA LIVESTOCK CORPORATION, Taxpayer

By Dale Porter Rees, President

 Corporate
By William J. Rees, Secy. Seal.

NOTE.—The execution and filing of this offer will expedite the adjustment of your tax liability. It is not, however, a final closing agreement under section 7121 of the Internal Revenue Code of 1954, nor does it extend the statutory period of limitation for refund, assessment, or collection of the tax. \* \* \*"

———◆———

Frequent misunderstandings arise from the use of Form 870–AD and its predecessors. Notwithstanding its obscure language and construction, the government continues to use this form as a settlement by which the government

**6**

and the taxpayer compromise their differences, the taxpayer agreeing to pay the deficiency and the government thereafter closing the case. The government contends that the controversy was closed upon the execution and acceptance of the Form, and that it relied upon the taxpayer's purported agreement to pay the tax and not to reopen the case. The Form and the circumstances surrounding its execution and acceptance infer a compromise of the tax liability.

 Persuasive authority sustains the binding effect of Form 870–AD provided the formal requirements of the statute are complied with. Botany Worsted Mills v. United States, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379 (1929); Anderson, Collector of Internal Revenue v. P. W. Madsen Inv. Co., 10 Cir., 72 F.2d 768 (1934); and Hamilton, et al. v. United States, Ct.Cl. 324 F.2d 960 (1963), rehearing denied, 1964. Compliance with the statute is presumed unless the contrary is shown. Anderson, Collector of Internal Revenue v. P. W. Madsen Inv. Co., 10 Cir., 72 F.2d 768 (1934). The plaintiff did not show by direct proof that either Section 3760 or Section 3761 were not complied with. There is no proof in the record that the acts of the Commissioner or his subordinates were unlawful or irregular. Absent evidence to the contrary there is a presumption of official regularity. R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647 (1934). The face of the executed Form 870–AD indicates acceptance by the Assistant Regional Commissioner. The action which was taken by the government upon receipt of the executed Form 870–AD also appears in the record. Mr. Denver E. Watson was the associate Chief in Charge of the Salt Lake City office of the Appellate Division, acting on behalf of the Commissioner of Internal Revenue by specific delegation order in the consideration and settlement of disputed tax cases. He testified that upon receipt of the 870–AD, he decided that it represented a fair settlement to both sides of the controversy and sent it to his superior officer in San Francisco.

When it was accepted on August 23, 1956, he or his office returned the case file to the office of the District Director for assessment of the agreed deficiency. No further action or non-action on the part of the government appears in the record. Plaintiff did not sustain its burden to show that the requirements of the statutes were not complied with. Under these circumstances, it must be concluded that the compromise of taxpayer's tax liability was legally accomplished.

 The grounds for estoppel are present in the case before me. It has been held that the taxpayer is precluded from claiming a refund on the theory of estoppel when the government, as in this case, in reliance on the promise not to claim a refund, has permitted the statute of limitations to run against the Commissioner's right to deal with the situation further. J. W. Cain v. United States of America, 8 Cir., 255 F.2d 193 (1958); Daugette, et al. v. Patterson, 5 Cir., 250 F.2d 753 (1957), cert. den. 356 U.S. 902, 78 S.Ct. 561, 2 L.Ed.2d 580; Guggenheim v. United States, 77 F.Supp. 186, 111 Ct. Cl. 165 (1948), cert. den. 335 U.S. 908, 69 S.Ct. 411, 93 L.Ed. 441.

The rules controlling here are that the Form 870–AD became a binding bilateral agreement when it was accepted; that it constitutes a final determination and agreement as to deficiency; and that a claim for refund cannot thereafter be entertained. The taxpayer was at all material times advised of its rights and was represented by its counsel. It availed itself of the administrative procedures, consultations, and protests and was successful in its effort to reduce the tax assessment made against it. By its execution of Form 870–AD and its acceptance by the government, both the taxpayer and the government gave up something of value and received benefits in return. The government agreed to a $20,578.95 reduction in the tax deficiency, and it also waived the penalty of $21,991.39 which had been originally imposed. The taxpayer agreed to accept and pay the reduced income tax deficiency of $67,386.61. I am in accord with Judge

Jameson's opinion in Lowe, et al. v. United States of America, D. C., Montana, 223 F.Supp. 948 (1963), wherein he quoted from Monge v. Smyth, 9 Cir., 229 F.2d 361 (1956), as follows:

"Thus we have a bilateral agreement which includes the waiver which when accepted on behalf of the Commissioner 'shall not be reopened nor shall any claim for refund be filed respecting the taxes * * *'. The acceptance by the Commissioner effected a final determination of deficiency and rendered unnecessary a formal deficiency determination."

For the foregoing reasons, I find that under the facts and circumstances of this case, taxpayer's execution of the Treasury Form 870–AD constitutes a bar to the prosecution of a claim for refund of taxes allegedly erroneously and illegally assessed and collected, and that the taxpayer is estopped from attempting to recover said tax payments.

This opinion sufficiently states the findings of fact and conclusions of law of the Court. Further findings of fact and conclusions of law are not necessary.

Judgment of dismissal will be entered accordingly.